2001 UT 9

**STATE of Utah, Plaintiff and Appellant,**

v.

**John Lamar CLARK, Defendant and Appellee.**

**State of Utah, Plaintiff and Appellant,**

v.

**Cory Howard Smith, Defendant and Appellee.**

**Nos. 990368, 990798.**

Supreme Court of Utah.

Feb. 6, 2001.

Mark L. Shurtleff, Att'y Gen., Kenneth A. Bronston, Asst. Att'y Gen., Simarjit S. Gill, Kenneth R. Updegrove, Salt Lake City, for plaintiff.

Kent R. Hart, Scott C. Williams, Salt Lake City, for defendants.

DURRANT, Justice:

¶ 1 In two separate prosecutions, Cory H. Smith and John L. Clark were charged with forgery. Smith was also charged with attempted theft by deception. In each case, the charges were based on allegations that the defendant had requested a bank to cash a recently stolen check and, when the bank did not readily comply, left the check and exited the bank. In each case, the defendant was initially bound over by a magistrate, but the bindover was subsequently quashed by the district court, on the ground that the State had failed to meet its evidentiary burden at the preliminary hearing. The State appeals both cases. Due to the similarity of the issues presented, the appeals have been consolidated.

## BACKGROUND

### I. *STATE V. SMITH*

¶ 2 Michelle Waldie drove to Draper City Park with her son on the morning of September 28, 1998. Between 10:00 a.m. and noon, someone broke a window of her car and stole a book of checks from her purse, which she had left in the car. Upon discovering the theft, Waldie quickly notified her bank that her checkbook had been stolen.

¶ 3 Later that day, Smith drove a car to the drive-up window of a First Security Bank office and attempted to cash one of the checks Waldie had reported as stolen. Because he did not have an account, Smith was told he would have to come inside the bank to cash the check. Smith entered the bank and presented the stolen check to Susan Paskett, a teller. The check was made out to Smith, as payee, for $400. Paskett asked Smith if he had an account at First Security and he replied that he did not. She informed him that to cash the check he would have to be fingerprinted and provide some form of identification. Smith provided a Utah identification card and the fingerprint of his right index finger, both of which were recorded on the check. Paskett then examined the account from which the check would be drawn to verify adequate funds and ensure there was no hold on the check. She discovered that there was, in fact, a hold on the account.

¶ 4 Because Paskett needed to go to another computer terminal to determine the reason for the hold, she told Smith she "would be right back" and walked away. She did not tell him about the hold on the account. Paskett went to the desk of her supervisor, Tonya Lindsay, and informed her of the situation. From Lindsay's computer terminal, the two discovered that the check had been reported as stolen. Lindsay called the police. After about five minutes, Smith came over to Lindsay's desk and asked, "What's the problem?" Lindsay, who was on the telephone, responded that she was trying to get approval for the check. Smith then exited the bank, leaving the check behind.

¶ 5 Smith was later arrested and charged with forgery and attempted theft by decep-

tion. The State presented evidence of the above facts at the preliminary hearing. Also, Waldie testified she had never met Smith and had never written a check to him. She further testified that the signature on the check was not hers. The magistrate then bound Smith over for trial. Smith filed a motion to quash the bindover, arguing that the evidence at the preliminary hearing did not show that he had the knowledge required to commit forgery. The district court agreed, concluding that the State had failed to demonstrate "probable cause." Accordingly, the court quashed the bindover and dismissed the charges against Smith.

## II. *STATE V. CLARK*

¶ 6 On July 1, 1998, Syd Page realized a book of her checks had been stolen from her workplace and so informed Zions First National Bank, where she held the checking account. Later that day, Clark entered a Zions branch and attempted to cash one of the checks that had been reported stolen by Page. The teller, Travis Colledge, asked Clark for identification and a fingerprint. Clark presented a Utah identification card and allowed Colledge to take his fingerprint. Colledge then entered Page's account number in his computer and discovered that the check had been reported stolen. He told Clark that there was a problem with the account and he would have to "take that up with the account holder." Clark then left the bank, taking with him his identification card, but not the check. Colledge followed him out of the bank, wrote down the license plate number of Clark's vehicle, and called the police.

¶ 7 A short time later, Clark was arrested, identified by Colledge, and charged with forgery. The State presented evidence of the above facts at the preliminary hearing. Also, Page testified that she had never met Clark and had never written a check to him. The magistrate then bound Clark over for trial. Clark filed a motion to quash the bindover, arguing that the evidence at the preliminary hearing did not show that he had the intent and knowledge required to commit forgery. The district court agreed, concluding that the State had failed to demonstrate "probable

cause." The court quashed the bindover and dismissed the forgery charge against Clark.

## STANDARD OF REVIEW

¶ 8 The determination of whether to bind a criminal defendant over for trial is a question of law. *See State v. Humphrey*, 823 P.2d 464, 466 (Utah 1991). Accordingly, we review that determination without deference to the court below. *See id.* at 465–66.

## DISCUSSION

¶ 9 The issue on appeal is whether the district court judges erred in quashing the magistrates' findings that there was probable cause to bind Smith and Clark over for trial.

### I. THE PROBABLE CAUSE STANDARD

¶ 10 To bind a defendant over for trial, the State must show "probable cause" at a preliminary hearing by "present[ing] sufficient evidence to establish that 'the crime charged has been committed and that the defendant has committed it.'" *State v. Pledger*, 896 P.2d 1226, 1229 (Utah 1995) (quoting Utah R.Crim.P. 7(h)(2)). At this stage of the proceeding, "the evidence required [to show probable cause] ... is relatively low because the assumption is that the prosecution's case will only get stronger as the investigation continues." *Evans v. State*, 963 P.2d 177, 182 (Utah 1998) (citing *Pledger*, 896 P.2d at 1229). Accordingly, "[w]hen faced with conflicting evidence, the magistrate may not sift or weigh the evidence ... but must leave those tasks 'to the fact finder at trial.'" *State v. Hester*, 2000 UT App 159, ¶ 7, 3 P.3d 725 (quoting *State v. Wells*, 1999 UT 27, ¶ 2, 977 P.2d 1192). Instead, "[t]he magistrate must view all evidence in the light most favorable to the prosecution and must draw all reasonable inferences in favor of the prosecution." *Id.* (citing *Pledger*, 896 P.2d at 1229). Yet, "[t]he magistrate's role in this process, while limited, is not that of a rubber stamp for the prosecution.... Even with this limited role, the magistrate must attempt to ensure that all 'groundless and improvident prosecutions' are ferreted out no later than the preliminary hearing." *Id.* (quoting *State*

*v. Anderson,* 612 P.2d 778, 783–84 (Utah 1980)).

¶ 11 With these principles in mind, we turn to the question of what quantum of evidence is sufficient to support a finding of probable cause at the preliminary hearing stage of a prosecution. We have taken various approaches in articulating an answer to this question. In some cases, we have described the State's burden of proof at a preliminary hearing by comparing it to the burdens applicable to other stages of a criminal prosecution. We have held that the quantum of evidence necessary to establish probable cause at the preliminary hearing is "more than [is] required to establish probable cause for arrest." *Anderson,* 612 P.2d at 783 n. 13. To issue an arrest warrant, "the facts presented must be sufficient to establish that an offense has been committed and a *reasonable belief* the defendant committed it. The facts presented, however, do not have to establish a prima facie case against the defendant." *Id.* at 783 (emphasis added).[1] We have further held that the probable cause standard is also "less than would prove the defendant guilty beyond a reasonable doubt." *Id.* at 783 n. 13. Indeed, we recently stated, "[The probable cause] standard is lower, even, than a preponderance of the evidence standard applicable to civil cases." *Pledger,* 896 P.2d at 1229 (quoting and adopting the conclusion of the district court from which *Pledger* was appealed). Thus, our case law to this point places the level of proof necessary to support a preliminary hearing bindover somewhere between the reasonable belief necessary to support a warrant and the preponderance of the evidence standard applicable in the civil context.

¶ 12 In a number of cases, we have equated the preliminary hearing probable cause standard with the motion for directed verdict standard, i.e., "to survive a motion to quash a bindover, the State must produce enough evidence sufficient to survive a *motion for directed verdict* with respect to each element of the crime." *State v. Talbot,* 972 P.2d 435, 438 (Utah 1998) (emphasis added) (citing *Pledger,* 896 P.2d at 1229); *see also, e.g., Hester,* 2000 UT App 159, ¶ 6, 3 P.3d 725 (noting that "[t]he prosecution, at a minimum, must establish 'a *prima facie case* against the defendant from which the trier of fact could conclude the defendant was guilty of the offense as charged'" (quoting *Anderson,* 612 P.2d at 783)); *Pledger,* 896 P.2d at 1229 (equating the probable cause standard with the standard for a directed verdict in a civil case, i.e., "'unless the evidence is wholly lacking and incapable of reasonable inference to prove some issue which supports the [prosecution's] claim,' the magistrate should bind the defendant over for trial") (quoting *Cruz v. Montoya,* 660 P.2d 723, 729 (Utah 1983)). We have justified the use of a single standard in both these contexts as follows: "Since both a directed verdict and a motion to quash [a magistrate's order binding a defendant over for trial] serve gatekeeping functions, it is sensible for them to share a common standard." *Talbot,* 972 P.2d at 438.

¶ 13 The court of appeals has correctly summarized the directed verdict standard as follows:

P.2d 837. Though phrased differently, there is little, if any, difference in these arrest warrant standards. *See, e.g.,* Daniel L. Rotenberg, *Annual Survey of the United States Supreme Court and Federal Law: Essay: On Seizures and Searches,* 28 Creighton L.Rev. 323, 338–39 (1995) (noting that while "fair probability" seems to be a lower standard than "substantial probability," it is difficult to say this conclusively because probable cause "never had and never will have a precise meaning"). Indeed, the court of appeals notes that both the "fair probability" wording and the "reasonable belief" wording have been applied to search warrants in federal courts. *See State v. Brooks,* 849 P.2d 640, 643 (Utah Ct.App.1993).

1. The probable cause standard necessary to support an arrest warrant has been worded differently by other courts. In federal court, to demonstrate probable cause for an arrest warrant, there must be a "'fair probability,'" *United States v. Dzialo,* 773 F.Supp. 21, 24 (E.D.Mich. 1991) (emphasis added) (quoting *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)), or *"substantial probability* that a crime has been committed and that a specific individual committed the crime." *Taylor v. Meacham,* 82 F.3d 1556, 1562 (10th Cir. 1996) (emphasis added). We have adopted the "fair probability" wording in defining the probable cause necessary to obtain a search warrant. *See, e.g., State v. Decorso,* 1999 UT 57, ¶ 59, 993

"[T]he trial court should dismiss the charge if the State did not establish a prima facie case against the defendant by producing 'believable evidence of all the elements of the crime charged.'" *State v. Emmett,* 839 P.2d 781, 784 (Utah 1992) (quoting *State v. Smith,* 675 P.2d 521, 524 (Utah 1983)). If, however, "*'the jury acting fairly and reasonably could find the defendant guilty beyond a reasonable doubt,* the judge is required to submit the case to the jury for determination of the guilt or innocence of the defendant.'" *State v. Taylor,* 884 P.2d 1293, 1296 (Utah Ct.App.1994) (quoting *State v. Iverson,* 10 Utah 2d 171, [173,] 350 P.2d 152, 153 (1960)). We will uphold the trial court's decision to submit a case to the jury " 'if, upon reviewing the evidence and all inferences that can be reasonably drawn from it, the court concludes that some evidence exists from which a reasonable jury could find that the elements of the crime had been proven beyond a reasonable doubt.'" *Id.* (quoting *State v. Dibello,* 780 P.2d 1221, 1225 (Utah 1989)).

*State v. Adams,* 955 P.2d 781, 787 (Utah Ct.App.1998)(emphasis added). In other words, even if a judge subjectively concludes, following the presentation of the prosecution's case, that there is reasonable doubt as to the defendant's guilt, the judge is nevertheless obligated to submit the case to the jury if the evidence is sufficient that a reasonable jury could find the defendant guilty beyond a reasonable doubt.[2]

¶ 14 However, any conclusion that the preliminary hearing probable cause standard is the same as the directed verdict standard is weakened by our other descriptions of the preliminary hearing standard. In *Pledger* we held that the probable cause standard at a preliminary hearing is "lower, even, than a preponderance of the evidence standard applicable to civil cases." 896 P.2d at 1229. In retrospect, this guidance was more confusing

than helpful. As noted earlier, "[w]hen faced with conflicting evidence, the magistrate may not sift or weigh the evidence ... but must leave those tasks 'to the fact finder at trial.'" *Hester,* 2000 UT App 159, ¶ 7, 3 P.3d 725 (quoting *Wells,* 1999 UT 27, ¶ 2, 977 P.2d 1192). However, the preponderance of the evidence standard can only be met by weighing the evidence. *See Finlayson v. Brady,* 121 Utah 204, 206, 240 P.2d 491, 492 (1952); *see also State v. Archuleta,* 812 P.2d 80, 82–83 (Utah Ct.App.1991). Thus, our comparison of the probable cause standard to the preponderance standard was, essentially, a comparison of apples to oranges that could lead magistrates at the preliminary hearing stage of a criminal proceeding to improperly weigh the evidence before them as permitted by the civil preponderance standard. As a result, despite our recent efforts to clarify the exact meaning of the probable cause standard, *see Talbot,* 972 P.2d at 437, it remains somewhat confusing. Therefore, we take this opportunity to elucidate that standard.

¶ 15 We hold that to prevail at a preliminary hearing, the prosecution must still produce " 'believable evidence of all the elements of the crime charged,'" *State v. Emmett,* 839 P.2d 781, 784 (Utah 1992) (quoting *State v. Smith,* 675 P.2d 521, 524 (Utah 1983)), just as it would have to do to survive a motion for a directed verdict. However, unlike a motion for a directed verdict, this evidence need not be capable of supporting a finding of guilt beyond a reasonable doubt.

¶ 16 Instead, we hold that the quantum of evidence necessary to support a bindover is less than that necessary to survive a directed verdict motion. Specifically, we see no principled basis for attempting to maintain a distinction between the arrest warrant probable cause standard and the preliminary hearing probable cause standard. Our efforts to articulate a standard that is more rigorous than the arrest warrant stan-

---

**2.** A similar standard applies to both motions for judgment notwithstanding the verdict and motions for arrest of judgment. *See, e.g., State v. James,* 819 P.2d 781, 784 (Utah 1991) (defining motion for judgment notwithstanding the verdict); *State v. Rudolph,* 2000 UT App 155, ¶ 17, 3 P.3d 192 (defining motion to arrest a jury ver-

dict). Thus, a motion for a directed verdict, a motion for judgment notwithstanding the verdict, and a motion for arrest of judgment all hinge on the same basic standard, i.e., whether, viewing the evidence in the light most favorable to the prosecution, a reasonable jury could find the defendant guilty beyond a reasonable doubt.

dard and is still lower than a preponderance of the evidence standard have only resulted in confusion. Therefore, at both the arrest warrant and the preliminary hearing stages, the prosecution must present sufficient evidence to support a reasonable belief that an offense has been committed and that the defendant committed it. *See Anderson,* 612 P.2d at 783.[3] This "reasonable belief" standard has the advantage of being more easily understood while still allowing magistrates to fulfill the primary purpose of the preliminary hearing, "ferreting out ... groundless and improvident prosecutions." *Anderson,* 612 P.2d at 783–84.

## II.  APPLYING THE STANDARD TO CLARK AND SMITH

¶ 17 The Utah Code defines the crime of forgery as follows:

A person is guilty of forgery if, *with purpose to defraud anyone, or with knowledge that he is facilitating a fraud to be perpetrated by anyone,* he:

(a) alters any writing of another without his authority or utters any such altered writing; or

(b) makes, completes, executes, authenticates, issues, transfers, publishes, or utters any writing so that the writing or the making, completion, execution, authentication, issuance, transference, publication or utterance purports to be the act of another, whether the person is existent or nonexistent, or purports to have been executed at a time or place or in a numbered sequence other than was in fact the case, or to be a copy of an original when no such original existed.

Utah Code Ann. § 76–6–501(1) (1999) (emphasis added).

¶ 18 The district court dismissed the forgery charges against both Clark and Smith because the State failed to demonstrate that they had acted with the requisite intent. However, in doing so, the district court applied the directed verdict standard. Because we reject the notion that the probable cause standard is equivalent to the directed verdict standard, we apply the clarified probable cause standard.[4]

¶ 19 Viewed in the light most favorable to the prosecution, the facts presented at the preliminary hearing were sufficient to meet the reasonable belief standard. The State presented evidence that both Clark and Smith attempted to cash forged checks at local banks mere hours after those checks

---

3. In a pragmatic sense, however, the State still has a higher bar at the preliminary hearing stage than at the arrest warrant stage:

Although the hearing is not a trial per se, it is not an ex parte proceeding nor [a] one-sided determination of probable cause, and the accused is granted a statutory right to cross-examine the witnesses against him, and the right to subpoena and present witnesses in his defense. Thus, the preliminary examination is an adversarial proceeding in which certain procedural safeguards are recognized as necessary to guarantee the accused's substantive right to a fair hearing.

*Anderson,* 612 P.2d at 783. However, this distinction has been somewhat reduced by the recent amendment to the Utah Constitution allowing for the admission of "reliable hearsay evidence" at "preliminary examinations." *See* Utah Const. art. I, § 12; *see also* Utah R.Crim.P. 7(h)(2) (noting that at a preliminary examination, "[t]he findings of probable cause may be based on hearsay in whole or in part"); Utah R. Evid. 1102 (outlining admissible hearsay evidence at a preliminary hearing).

4. On appeal, the parties focus substantial portions of their arguments on the continuing validity of *State v. Williams,* 712 P.2d 220 (Utah 1985).

In *Williams* we upheld a jury conviction for forgery. Williams presented a check payable to him that "was drawn on the business account of William Angell Construction Company." *See id.* at 221. In upholding the verdict, this court noted Angell had testified "that the check, along with two other checks, had been taken from the office located in his home. He further testified that he did not know defendant, had never employed him, did not owe him money, and that he had not written the check nor authorized anyone to do so." *See id.* at 223. The State argues that *Williams* is factually indistinguishable from the instant case, and that if *Williams* justifies upholding a conviction in this case then it is, *a fortiori,* sufficient to support the magistrates' decisions that bound Clark and Smith over for trial. The court of appeals has asserted that *Williams* stands for the proposition that "a person who merely utters a forged instrument can be inferred to have had knowledge of the forgery," *State v. Kihlstrom,* 1999 UT App 289, ¶ 13, 988 P.2d 949, and, in light of that interpretation, Smith and Clark argue that we should take this opportunity to overturn *Williams.* We decline the invitation to reconsider *Williams.*

were reported stolen. After a brief delay while bankers told Smith that they were seeking approval to cash the check, Smith exited the bank, abandoning the forged check. Similarly, when told that there was a problem with the account and that he would have to take it up with the account holder, Clark abandoned the forged check and left the bank.

¶ 20 The issue is whether this evidence is sufficient to support a reasonable belief that Smith and Clark uttered forged checks "with purpose to defraud anyone, or with knowledge that [they were] facilitating a fraud to be perpetrated by anyone." *Id.* Here, the facts give rise to two alternate inferences. On the one hand, Clark and Smith may have been unaware the checks were stolen. After the delays, they may have simply assumed they had themselves been defrauded and, thus, felt there was no reason to take the checks with them. On the other hand, one could reasonably infer an intent to defraud. If Smith were a holder in due course he would have waited for approval rather than leaving when he had been given no other explanation for the delay. If Clark were a holder in due course, he would have taken the check with him to "take that up with the account holder." Further, both Clark and Smith presented the checks only hours after the reported thefts. While one could infer that Clark and Smith received the checks in otherwise legitimate transactions, this does not negate the reasonable inference that, in light of the timing, they either stole the checks or knew they were stolen. Viewing the evidence, and all reasonable inferences therefrom, in a light most favorable to the State, the State has shown probable cause. Therefore, the district courts' findings to the contrary are reversed.[5]

## CONCLUSION

¶ 21 We reverse the district court's orders that quashed the magistrates' orders binding Clark and Smith over for trial and remand

for further proceedings consistent with this opinion.

¶ 22 Chief Justice HOWE, Associate Chief Justice RUSSON, Justice DURHAM, and Justice WILKINS concur in Justice DURRANT'S opinion.

---

5. The State also argues on appeal that the district court erred in quashing the magistrate's order binding Smith over on the charge of attempted theft by deception. We decline to address this issue, however, because the State has failed to adequately brief it. *See* Utah R.App.P. 24(a)(9).