*This opinion is subject to revision before final publication in the Pacific Reporter*

**2016 UT 4**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Petitioner,*

*v.*

ADAM HOWARD JONES,
*Respondent.*

No. 20140753
Filed January 11, 2016

On Certiorari to the Utah Court of Appeals

Third District, Silver Summit
The Honorable L. A. Dever
No. 111500107

Attorneys:

Sean D. Reyes, Att'y Gen., John J. Nielsen, Asst. Att'y Gen.,
Salt Lake City, for petitioner

Ronald J. Yengich, Salt Lake City, for respondent

ASSOCIATE CHIEF JUSTICE LEE authored the opinion of the Court, in
which CHIEF JUSTICE DURRANT, JUSTICE DURHAM, and JUSTICE
HIMONAS joined.

JUSTICE JOHN A. PEARCE became a member of the Court on December
17, 2015, after oral argument in this matter, and accordingly did not
participate.

ASSOCIATE CHIEF JUSTICE LEE, opinion of the Court:

¶ 1    Adam Jones stands charged with official misconduct under
Utah Code section 76-8-201 and with witness tampering under Utah
Code section 76-8-508(1). At a preliminary hearing in the district
court, the magistrate judge refused to bind him over for trial. The
court of appeals affirmed on appeal. We reverse.

I

¶ 2 At 9:45 p.m. on March 7, 2011, Police Chief Adam Jones—one–half of the two-person police force in Kamas, Utah—had fifteen minutes left in his ten-hour shift when he received a call on his personal cell phone.[1] The caller was D.M., the girlfriend of Jones's brother, Travis. D.M. asked Jones "to come over and talk or take care of [Travis]." *Preliminary Hearing*, Nov. 28, 2011 at 56–57 (Hearing). This had happened many times before. Travis had a tendency to get violent when drunk, and throughout the years Travis's girlfriends had often called Jones, asking him to come calm his brother down. Travis has had three or four previous domestic violence charges.

¶ 3 Still on duty and in uniform, Jones drove his police car the few blocks from the police station to Travis's house. Upon arriving, Travis—drunk, but calm—met Jones at the door. Travis was shirtless. Jones could see scratches on his brother's chest. Travis claimed that D.M. had inflicted them, and directed Jones to the garage. Jones found D.M. there. She stated that Travis had kicked her in the shin. Yet Jones observed no marks or bruising, and D.M. "seemed normal" while "walking around" and "up the stairs in the garage." *Interview of Chief Adam Jones by Utah Attorney General's Office Special Agents*, (Mar. 7, 2011) at 7–8, 10, 19 (Interview).

¶ 4 Jones asked D.M. if she wanted him to call the Summit County Sheriff's Office for her since he could not get involved with family. D.M. declined, indicating that they could not afford for Travis to go to jail again. Instead, she asked that Jones put Travis to bed. Jones then reiterated his offer to call county law enforcement, but D.M. again declined.

¶ 5 When Jones returned to his brother, Travis admitted that he had scratched himself in an attempt to get D.M. in trouble. At that point Travis was on the verge of passing out, and Jones told him to go to bed. Jones then returned to D.M. and asked her once more if she wanted him to call the sheriff's office. When she again declined, Jones directed her to call the sheriff if anything else happened. Jones spent about fifteen or twenty minutes at his brother's home. He then returned to the police station and clocked out from his shift. He did not file a report of the incident or give D.M. a "written notice of her rights and remedies available" as required by Utah Code section 77-36-2.1(2)(a).

---

[1] The facts are stated "in the light most favorable to the prosecution," with all "reasonable inferences" in its favor. *State v. Clark*, 2001 UT 9, ¶ 10, 20 P.3d 300 (citation omitted).

¶ 6 Later that evening D.M. again called Jones. But he refused to answer when he saw who was calling. Jones then later observed on his computer at home that a 911 call had been placed from his brother's residence. He turned on his police radio and listened to the response of the sheriff's department and subsequent arrest of his brother for assaulting and injuring both D.M. and her ten-year-old son.

¶ 7 Travis was aggressive, violent, and vulgar during his arrest and transport to the county jail. During the investigation that evening, the sheriff's department learned that Jones had been at Travis's home earlier in the day. A sheriff's deputy also observed "the starting of bruising" on D.M.'s leg. *Hearing* at 51.

¶ 8 The next morning Jones visited Travis in jail. The deputy on duty overheard, from about seven feet away, Jones inform his brother that he was passed out in bed when Jones had arrived at Travis's house the night before. After visiting with his brother, Jones also conversed with the deputy—informing him that Travis had been passed out when Jones had showed up at his home.

¶ 9 The State charged Jones with witness tampering, a third–degree felony, and official misconduct, a class B misdemeanor.[2] As to the first count, the State asserted that Jones violated section 76-8-201 when he, "with an intent to benefit himself or another . . . knowingly refrain[ed] from performing a duty imposed on him by [the Cohabitant Abuse Procedures Act]." *Ruling & Order* at 5–7. That act requires any "law enforcement officer who responds to an allegation of domestic violence" to, among other things, "protect the victim and prevent further violence"; "give written notice to the victim . . . describing [one's legal] rights and remedies"; and "arrest without a warrant or . . . issue a citation to any person that the peace officer has probable cause to believe has committed an act of domestic violence." UTAH CODE §§ 77-36-2.1 & 2.2. Regarding the second count, the State asserted that Jones "tamper[ed] with a witness" when, "believing that an official proceeding or investigation is pending or about to be instituted, or with the intent to prevent an official proceeding or investigation, he attempt[ed] to induce or otherwise cause [his brother] to testify or inform falsely; [or] withhold . . . testimony." UTAH CODE § 76-8-508(1).

---

[2] A third, alternative charge to the official misconduct charge—official neglect and misconduct—was not included in the State's petition for certiorari, and is thus not before this court.

¶ 10 The magistrate judge concluded that the State had not met its burden of presenting sufficient evidence to support a reasonable belief that Jones had committed witness tampering or official misconduct. *Ruling & Order* at 10–11. A majority of the court of appeals affirmed on both counts, observing that "[t]he Act does not impose its duties on all police officers at all times but rather on police officers who are responding to allegations of domestic violence." *State v. Jones*, 2014 UT App 142, ¶ 20, 330 P.3d 97. Because in its view "[t]he totality of the circumstances of the . . . incident includes undisputed evidence that [D.M.] called Jones on his personal cell phone and that Jones responded to that personal call solely in his capacity as Travis's brother," the court concluded that there was insufficient evidence to support a bindover. *Id.* ¶ 23. Judge Christiansen dissented on this point, asserting that Jones's legal duty as a law enforcement officer was triggered when D.M. made an allegation of domestic violence. *Id.* ¶ 41. For the second count, the court of appeals held that "[w]e cannot infer Jones's belief of an official investigation from his actions when . . . those actions did not constitute a crime or otherwise suggest the likelihood of an investigation." *Id.* ¶ 33. On that count the court of appeals' decision was unanimous.

II

¶ 11 The prosecution bears the burden of proof at a preliminary hearing. That burden protects our citizens from "groundless and improvident prosecutions," *State v. Virgin*, 2006 UT 29, ¶ 20, 137 P.3d 787, or in other words, from "the substantial degradation and expense incident to a modern criminal trial when the charges . . . are unwarranted or the evidence insufficient," *State v. Anderson*, 612 P.2d 778, 784 (Utah 1980). It does so by requiring the prosecution to "present sufficient evidence to support a reasonable belief that an offense has been committed and that the defendant committed it." *State v. Clark*, 2001 UT 9, ¶ 16, 20 P.3d 300.

¶ 12 Yet the prosecution's burden is light. The question at the preliminary hearing is whether the prosecution has presented evidence sufficient to sustain "probable cause." This is the same standard that applies on review of an arrest warrant. *See State v. Ramirez*, 2012 UT 59, ¶ 9, 289 P.3d 444.

¶ 13 To establish probable cause, the evidence need not rise to a level "supporting a finding of guilt" at trial. *Virgin*, 2006 UT 29, ¶ 20 (citation omitted). "[N]or do we require the prosecution 'to eliminate alternative inferences that could be drawn from the evidence in favor of the defense.'" *State v. Schmidt*, 2015 UT 65, ¶ 18, 356 P.3d 1204 (citation omitted). "Rather, a magistrate has discretion 'to decline

bindover' only 'where the facts presented by the prosecution provide no more than a basis for speculation.'" *Id.* (citation omitted). Thus, the magistrate may "disregard or discredit" the prosecution's evidence only when it is "'wholly lacking and incapable of creating a reasonable inference regarding a portion of the prosecution's claim.'" *Virgin*, 2006 UT 29, ¶ 24 (citation omitted). "It is therefore not appropriate for a magistrate to evaluate 'the totality of the evidence in search of the *most* reasonable inference' at a preliminary hearing." *Schmidt*, 2015 UT 65, ¶ 18 (emphasis added) (citation omitted). "Our justice system entrusts that task to the fact-finder at trial." *Id.*

¶ 14 We review the decision of the court of appeals under these standards. "We apply a de novo standard of review in assessing the court of appeals' decision . . . ." *State v. Maughan*, 2013 UT 37, ¶ 12, 305 P.3d 1058. In so doing, however, we recognize that the correctness of the court of appeals' decision "turns in part on whether it applied an appropriate standard of review in affirming the magistrate's decision, and that a magistrate's bindover decision is a mixed determination that is entitled to some limited deference." *Id.*

¶ 15 We reverse. We conclude that the State has presented evidence supporting a reasonable belief that each offense in question was committed by the defendant. The evidence on at least some elements of the crimes in question is limited. And the State's evidence may perhaps seem outweighed by evidence cutting the other way. But we find that the court of appeals—and, in turn, the magistrate—erred in weighing the evidence in search of the most reasonable inference. And we reverse on that basis.

A

¶ 16 The first crime in question is a misdemeanor charge of official misconduct under Utah Code section 76-8-201. Official misconduct is implicated where a "public servant . . . knowingly refrains from performing a duty imposed on him by law or clearly inherent in the nature of his office," "with an intent to benefit himself or another or to harm another." UTAH CODE § 76-8-201.

¶ 17 Jones stands charged with failing to respond to an "allegation," "call," or "complaint[]" of domestic violence under Utah Code sections 77-36-2.1 & 2.2. By statute, law enforcement officers who respond to an allegation of domestic violence are required to "use all reasonable means to protect the victim and prevent further violence." *Id.* § 77-36-2.1(1). They are further bound to "arrest without a warrant or . . . issue a citation to any person"

they have "probable cause to believe has committed an act of domestic violence." *Id*. § 77-36-2.2(2)(a).

¶ 18 Jones's alleged crime was in failing to fulfill these statutory duties "knowingly" and "with an intent to benefit himself or another or harm another." *Id.* 76-8-201. The court of appeals found the prosecution's case lacking on a threshold element—on whether Jones was responding to a domestic violence call *as a law enforcement officer*. It concluded that "the totality of the evidence" undermined "the State's proposed inference that Jones responded to [D.M.'s] personal call as a police officer making an official response to a domestic violence call." *Jones*, 2014 UT App 142, ¶¶ 24, 33. Thus, the court of appeals acknowledged that the prosecution had presented evidence "consistent with an inference of official capacity." *Id*. ¶ 24. But it rejected that evidence on the ground that it was not to be "viewed in isolation." *Id*. And "in light of *all* of the evidence presented to the magistrate," the court of appeals concluded that "the inference presented by the State 'falls to a level of inconsistency or incredibility'" that it could not reasonably be accepted. *Id*. (quoting *State v. Machan*, 2013 UT 72, ¶ 8, 322 P.3d 655).

¶ 19 The magistrate's analysis was along similar lines. He dismissed the official misconduct charge on the basis of his determination that there was "no showing" that Jones was "responding to an allegation of domestic abuse." *Ruling and Order* at 8.

¶ 20 We view the record differently. We find sufficient evidence to sustain a reasonable inference that Jones committed official misconduct in knowingly failing to respond to an allegation of domestic violence, and that he did so with an intent to benefit himself or another. And we reverse on the ground that the court of appeals—and, initially, the magistrate—erred in substituting its own reasonable inference for that advanced by the prosecution.

¶ 21 As the court of appeals indicated, the evidence presented at the hearing included grounds supporting Jones's view that he was not responding to an allegation or complaint of domestic violence: D.M. "called Jones on his personal cell phone"; both Jones and D.M. testified that they believed that Jones responded to the call "solely in his capacity as Travis's brother" and that Jones was not "present as a police officer"; Jones informed D.M. "at the scene that he could not become professionally involved because he was Travis's brother"; and Jones "repeatedly offered to contact the sheriff's office if [D.M.] desired official law enforcement involvement." 2014 UT App 142, ¶ 23. This evidence may very well support a verdict at trial in Jones's favor.

¶ 22 But that is not the benchmark. The liberal bindover standard does not authorize the courts to second-guess the prosecution's evidence by weighing it against the totality of the evidence in search of the most reasonable inference to be drawn therefrom. Under the probable cause standard, we are required to take the perspective of the reasonable *arresting officer*—and to do so through a lens that gives the benefit of all reasonable inferences to the prosecution. Thus, we ask whether *any officer*, viewing the evidence in the light most favorable to the prosecution, could reasonably conclude that a crime was committed and that the defendant committed it. And in making that assessment we are required to give the benefit of all reasonable inferences to the prosecution.[4]

¶ 23 We disagree with the court of appeals' (and the magistrate's) assessment of the evidence under this standard. We find sufficient evidence cutting in favor of a reasonable determination that Jones was acting in the capacity of a law enforcement officer responding to an allegation of domestic violence—enough evidence to sustain a reasonable determination of probable cause to place Jones under arrest for official misconduct.

¶ 24 In light of this evidence, it cannot properly be said that "[t]he *undisputed evidence*" indicates that "Jones was summoned and responded solely as a family member." *Id*. ¶ 24 (emphasis added). At most it could be said that there is evidence going both ways—and, perhaps, that a strong argument can be made on this record that Jones was acting as a family member and not as an officer of the law when he was summoned to the home shared by his brother and by D.M. But a strong argument the other way isn't enough to foreclose a trial on the merits. Weighing evidence in search of the most reasonable inference to be drawn therefrom is the role of the factfinder at trial. We think there was enough evidence to sustain an arresting officer's reasonable inference that Jones was acting as a law enforcement officer when he was summoned by phone to his brother's house.

¶ 25 Second, the evidence in question is not limited to the circumstances of the initial call to Officer Jones. The applicable statutes do not require a formal dispatch call on a domestic violence charge. They require only that the officer "respond[] to a domestic violence call," which is framed alternatively in the statute as an

---

[4] *See State v. Schmidt*, 2015 UT 65, ¶¶ 21–22, 356 P.3d 1204 (clarifying that the bindover standard requires only a reasonable basis for an arrest, "not a reasonable basis for a conviction" at trial).

"allegation" or "complaint" of domestic violence. UTAH CODE §§ 77-36-2.1(1), 2.2(1), (3)–(6). So even if Jones's initial arrival at his brother's home was not a response to a domestic violence call, it could have become one after he arrived. *See Jones*, 2014 UT App 142, ¶¶ 40–41 (Christiansen, J., dissenting) (concluding that Jones was responding to a domestic violence allegation as a law enforcement officer "once he arrived at his brother's house and was informed of the situation"). And there is evidence in the record to support a reasonable inference along those lines.

¶ 26  Upon arriving at his brother's house, Officer Jones discovered that his brother was drunk, that D.M. alleged that Travis had kicked her, and that Travis had scratched himself in an effort to get D.M. arrested (and, by permissible inference, to try to justify his act of kicking D.M.). This was enough to sustain a reasonable inference that Jones was confronted with an allegation or complaint of domestic violence after arriving at his brother's house (even if the initial call was something else)—particularly in light of the evidence of Jones's knowledge of his brother's history of violence while intoxicated.

¶ 27  As Jones notes, there was apparently no indication of redness or bruising resulting from Travis's alleged kick. But such evidence isn't required to sustain a reasonable determination of a credible allegation of domestic violence. *See State v. Robbins*, 2009 UT 23, ¶ 14, 210 P.3d 288 (concluding that a "jury can convict on the basis of the 'uncorroborated testimony of the victim'" (citation omitted)). Here, moreover, we must view the evidence in the light most favorable to the prosecution. Viewed in that light, we conclude that there is enough evidence to sustain a reasonable inference that Officer Jones was faced with a credible complaint of domestic violence after he arrived at his brother's home. And at that point, he became subject to the statutory duties imposed on law enforcement officers even if his response to the initial call from D.M. was a mere personal errand. *See* UTAH CODE § 76-8-201.

¶ 28  That leaves only the question whether there was probable cause for a reasonable officer to conclude that Jones's alleged failure to respond to a domestic violence complaint was "with an intent to benefit himself or another or to harm another." *Id.* Again we find sufficient evidence to support this element. The relevant evidence—that D.M. stated that she and Travis could not "afford" to have Travis go to jail "again," *Interview* at 8—could support a reasonable conclusion that Jones was seeking to spare himself or his brother the trouble and economic consequences of an arrest and possible jail time and eventual conviction.

¶ 29 There is also evidence cutting the other way. Jones may not have ultimately perceived a genuine threat of domestic violence. And while he was at his brother's home, he expressly urged D.M. to call the Summit County Sheriff's Office if she wished to pursue the matter further, and even offered to contact them himself. In light of these circumstances, a reasonable officer investigating Jones's activity could properly conclude that there was no legitimate domestic violence situation to be dealt with, and that any failure on Jones's part was not to benefit himself or his brother but simply to handle the situation as he thought best.

¶ 30 But again that is not the standard. Jones may ultimately be acquitted on this count. The factfinder at trial might well decide that Jones was acting in good faith and not in an attempt to benefit himself or his brother.

¶ 31 The judicial role at this stage, however, is not to prejudge the likely outcome of trial. It is simply to ask whether there is a nonspeculative basis in the evidence to sustain a reasonable basis for an arrest on the crime in question. We find the record to support such a basis and accordingly reverse.

B

¶ 32 The second crime in question is witness tampering under Utah Code section 76-8-508(1). "A person is guilty of the third degree felony of tampering with a witness if, believing that an official proceeding or investigation is pending or about to be instituted, or with the intent to prevent an official proceeding or investigation, he attempts to induce or otherwise cause another person to . . . testify or inform falsely." *Id.*

¶ 33 The charge against Jones under this statute was based on statements Jones made when he visited his brother in jail the morning after the incident in question. Specifically, Jones is charged with telling his brother that he was asleep when Jones arrived at his home the night before, and with reiterating that point in a conversation with the jailer. The theory of the prosecution is that testimony stating that Travis was asleep throughout Jones's visit to his home would make it less likely that Jones would be investigated or charged with official misconduct—since a sleeping Travis could not have engaged in domestic violence while Jones was at his home. And, because Jones had reason to suspect that the arresting officers had learned that he had been at his brother's home earlier in the evening, Jones may have had a basis for anticipating an investigation into his handling of the incident.

¶ 34 The magistrate dismissed this charge on the ground that there was no evidence that an official investigation was pending or about to be instituted when Jones spoke with Travis. *Ruling & Order* at 9–10. He also found a lack of evidence of *mens rea*—as to whether Jones *believed* that such an investigation was imminent. *Id.* at 9.

¶ 35 The court of appeals agreed. First, the court of appeals noted the basis for its dismissal of the official misconduct charge—that the evidence established that Jones was at his brother's home "solely on a family matter or 'personal frolic.'" *Jones*, 2014 UT App 142, ¶ 33. From that premise the court of appeals concluded that there was no evidence to sustain a reasonable inference that Officer Jones believed that an investigation was imminent. If there were some basis "for Jones to believe that there would be an investigation," the court acknowledged that Jones's "statement to Travis might give rise to an inference that he lied to Travis in order to impede that investigation." *Id.* ¶ 34. "But in the absence of other evidence that Jones believed an investigation was likely," the court concluded that it could not "'reasonably and logically' deduce that Jones believed that an investigation was pending merely from the evidence that he told Travis that he was passed out." *Id.*

¶ 36 In so concluding, the court of appeals noted that the "State's proposed inference" from the evidence was "not the only possible explanation of Jones's statement." *Id.* ¶ 36. The court deemed it "just as likely that Jones visited Travis in jail simply to check on his condition and told Travis that he had passed out . . . so as not to prompt a discussion of the prior evening's events." *Id.* And absent "independent evidence to support the State's proposed inference," the court deemed the prosecution's case against Jones a matter of "speculation rather than reasoned and logical deduction." *Id.*

¶ 37 Again we see the matter differently. We disagree both with the court of appeals' starting premise and with the basis for its ultimate holding. The court's initial premise fails for reasons set forth above in our analysis of the official misconduct charge: We find ample grounds for concluding that Jones was in a position of a law enforcement officer responding to an allegation of domestic violence and not "solely on a family matter or 'personal frolic.'" *Id.* ¶ 33. And with that in mind, we see more than a nonspeculative basis for an arresting officer to find probable cause for a determination that Jones may have believed that an official investigation was imminent.

¶ 38 As with the official misconduct charge, the factfinder could well reach a contrary conclusion at trial. There are grounds in the record for a jury to conclude that Jones was simply checking on his brother and seeking to avoid a difficult "discussion of the prior

evening's events." *Id.* ¶ 36. As Jones noted in his brief to this court, that conclusion would be supported by evidence that Jones ultimately cooperated fully in the investigation into his conduct and was "more than candid about his actions," telling detectives "that he was at his brother's house that night and that while he was there, he had put Travis to bed and that Travis was asleep in his bed before he left the residence."[5] *Resp. Br.* 20.

¶ 39    For these and other reasons, it may be that the factfinder will draw an inference in Jones's favor at trial and render a verdict of acquittal on this charge. *Id.* But again, our role is constrained in the bindover decision. It is not to decide whether we think the charges are likely to produce a conviction, or even whether we would be inclined to press charges if we were in a position to exercise prosecutorial discretion. Our task is much more circumscribed. It is to decide whether any reasonable police officer, viewing this record in the light most favorable to the prosecution, could conclude that Jones committed the offense of witness tampering.

¶ 40    We have no quarrel with the proposition that "[t]he State's proposed inference is . . . not the only possible explanation of Jones's statement[s]" about his brother being asleep when he visited him on February 15, 2011. *Jones*, 2014 UT App 142, ¶ 36. But the court of appeals' analysis stems from a misstatement of the governing legal standard.

¶ 41    At the preliminary hearing, our magistrates may not dismiss a criminal charge because they think there is a "possible" inference from the evidence supporting an acquittal. *See State v. Schmidt*, 2015 UT 65, ¶ 18, 356 P.3d 1204 (the prosecution is not required "to eliminate alternative inferences that could be drawn from the evidence in favor of the defense" (citation omitted)). The bindover bar is quite a bit lower than that. We have said that it is "not appropriate for a magistrate to evaluate 'the totality of the evidence in search of the most reasonable inference' at a preliminary hearing." *Id.* (citation omitted). So it is error to dismiss a charge at the

---

[5] As the State indicates, Jones's subsequent cooperation cannot conclusively defeat the charge of witness tampering, as "[t]he crime is accomplished by committing an act with intent to prevent an investigation," and subsequent repentance "does not obviate [the defendant's] culpability." *Pet. Reply* at 9. But that does not render Jones's subsequent cooperation irrelevant. On an element as difficult to prove as *mens rea*, subsequent activity may be particularly probative.

preliminary hearing because we deem an acquittal "just as likely" as—or even more likely than—a conviction. *Jones*, 2014 UT App 142, ¶ 36; *see State v. Schmidt*, 2015 UT 65, ¶¶ 17–18 ("[T]he state's burden at a preliminary hearing is probable cause—the same evidentiary threshold it must meet to secure an arrest warrant . . . . The 'evidence does not need to be capable of supporting a finding of guilt beyond a reasonable doubt.'" (citation omitted)).

¶ 42    The operative standard, again, is simply whether a reasonable officer, viewing the evidence in the light most favorable to the prosecution, could possibly conclude that each element of the offense in question was committed by the defendant. We reverse and hold that Officer Jones is subject to trial on the witness tampering charge under that permissive standard.

¶ 43 The relevant evidence, viewed in the light most favorable to the prosecution, shows that Jones was responding as a law enforcement officer to a domestic violence call at his brother's home, and that Jones had a basis for concluding that the sheriff's officers who arrested Travis knew that Jones had been at the home earlier the same night. On that basis, a reasonable arresting officer could properly infer that Jones's statements to his brother and to the jailer were aimed at preventing an investigation into Jones's official misconduct. The relevant evidence suggested that Jones had probable cause to believe that his brother had committed an act of domestic violence; that Jones was aware of—and knew he had not complied with—his statutory duties as a law enforcement officer faced with this charge of domestic violence; and that Jones knew that sheriff's deputies had responded later the same evening and arrested his brother on domestic violence charges.

¶ 44 This evidence is sufficient to sustain a reasonable determination of probable cause on the element of belief "that an official proceeding or investigation is pending or about to be instituted," or "intent to prevent an official proceeding or investigation." UTAH CODE § 76-8-508(1). Based on all the circumstances, and viewing them in the light most favorable to the prosecution, it is reasonable to infer that Jones believed that an investigation was imminent or intended to prevent one from being initiated.

¶ 45 The evidence also sustains a reasonable inference that Jones "attempt[ed] to induce or otherwise cause another person to . . . testify or inform falsely." *Id.* If the factfinder determines that Jones believed that an investigation was imminent or was seeking to prevent one from being initiated, it could also infer that Jones was

trying to influence his hung-over and possibly memory-impaired brother's recollection of events from the night before.

¶ 46 The State's proposed inferences may not ultimately be accepted by the jury at trial. It may prove difficult to persuade a jury that Jones was not just checking in on his brother but trying subtly to solicit his false testimony. But that is not the issue. The question presented concerns probable cause to arrest. And we hold that the State carried its limited burden on that issue.

───────────