**2017 UT App 184**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellant,
*v.*
KAITLIN HOMER,
Appellee.

Opinion
No. 20160163-CA
Filed October 5, 2017

Fifth District Court, St. George Department
The Honorable John J. Walton
No. 151501569

Brock R. Belnap and Bryan J. Wheat, Attorneys
for Appellant

Gary G. Kuhlmann and Todd R. Sheeran, Attorneys
for Appellee

JUDGE RYAN M. HARRIS authored this Opinion, in which JUDGES
DAVID N. MORTENSEN and DIANA HAGEN concurred.

HARRIS, Judge:

¶1   Kaitlin Homer was charged with, among other crimes, possession of methamphetamine (Count 1). After a preliminary hearing, the magistrate dismissed Count 1 because the State did not present any scientific evidence as to the actual identity of the substance. The State appeals the magistrate's ruling. We agree with the State that, in appropriate cases, the probable cause standard required for bindover can be satisfied with circumstantial evidence regarding drug identity, and that it is not always necessary to present scientific evidence of drug identity at a preliminary hearing. Because the circumstantial evidence of drug identity was, in this case, sufficient to

constitute probable cause that Homer possessed methamphetamine, we reverse.

¶2 In cases like this one where the State appeals a magistrate's decision not to bind over a criminal case after a preliminary hearing, we view the evidence in the light most favorable to the State and draw all reasonable inferences in its favor. *State v. Schmidt*, 2015 UT 65, ¶ 4, 356 P.3d 1204. We recite the facts with that standard in mind.

¶3 In 2015, a police officer observed Homer in front of her father's house in St. George, Utah. Homer was rummaging through items in a truck parked outside the house, and appeared to be attempting to hide something underneath one of the floor mats on the passenger's side. After Homer saw the officer, she exited the truck and locked its door. The officer approached Homer, and observed her "rubbing her arms, chewing on her cheeks," speaking inarticulately, repeating herself, and generally appearing very nervous. The officer testified at the preliminary hearing that he believed Homer was under the influence of drugs or alcohol.

¶4 Soon after speaking with Homer, the officer obtained consent from Homer's father to search the truck, and in the vehicle the officer discovered a number of syringes on the floorboard on the passenger's side. The syringes contained a clear liquid residue. Inside the truck, the officer also discovered a backpack that was later determined to be Homer's. In the backpack, among other items, the officer found multiple syringes as well as a small one-inch-by-one-inch baggie that contained a light crystal substance.

¶5 The officer testified at the preliminary hearing that he had been a police officer for nearly three years, and that he had received drug interdiction training, including specific courses on identifying particular types of illicit drugs. Based on that training and experience, the officer testified that he believed the light crystal substance inside the baggie was methamphetamine.

He grounded that conclusion on specific factors, such as the appearance of the substance and its location in a small baggie, which the officer testified was consistent with how methamphetamine is often packaged, as well as his belief that the syringes found in the truck were "typically used" for methamphetamine use.

¶6    However, the officer did not field-test the substance. At the preliminary hearing, the State did not present any other scientific evidence demonstrating that the substance was in fact methamphetamine. These facts—that the officer had not tested the substance and that the State had no other scientific evidence of the substance's identity—were dispositive for the magistrate. Indeed, the magistrate's ruling was that "[t]here was insufficient probable cause to bind over Count 1 due to the fact that the police officer had not field tested the suspected methamphetamine and thus could not testify to any field test results."

¶7    Although magistrates are afforded limited deference in making credibility determinations, we review any legal determinations made by the magistrate for correctness, without affording the magistrate any deference. *Schmidt*, 2015 UT 65, ¶ 13 (stating that "any departure from the correct legal standard will always exceed whatever limited discretion the magistrate has in the bindover decision" (citation and internal quotation marks omitted)).

¶8    In order to obtain a judicial determination binding a defendant over for trial at a preliminary hearing, the State must produce evidence demonstrating "probable cause." *Id.* ¶ 17 (citation omitted). This "relatively low" threshold is the same evidentiary standard used by officers when they determine whether they may legally arrest someone: there must be "a reasonable belief that an offense has been committed and that the defendant committed it." *Id.* ¶¶ 17, 22 (citations and internal quotation marks omitted); *see also State v. Jones*, 2016 UT 4, ¶ 22, 365 P.3d 1212 (stating that, "[u]nder the probable cause

standard" applicable at the preliminary hearing stage, "we are required to take the perspective of the reasonable *arresting officer*").

¶9     In evaluating the evidence presented at a preliminary hearing, the magistrate "must draw all reasonable inferences in the prosecution's favor," and there is no requirement that the State "eliminate alternate inferences that could be drawn from the evidence in favor of the defense." *Schmidt*, 2015 UT 65, ¶ 18 (citation and internal quotation marks omitted). Importantly, the evidence presented "does not need to be capable of supporting a finding of guilt beyond a reasonable doubt." *Id.* Indeed, our supreme court has clearly stated that "the quantum of evidence necessary to support a bindover is less than that necessary to survive a directed verdict motion." *State v. Clark*, 2001 UT 9, ¶ 16, 20 P.3d 300. In fact, "a magistrate has discretion to decline bindover only where the facts presented by the prosecution provide no more than a basis for speculation." *Jones*, 2016 UT 4, ¶ 13 (citation and internal quotation marks omitted). Although the magistrate does have limited discretion to make credibility determinations and to disregard evidence that is "so contradictory, inconsistent, or unbelievable that it is unreasonable to base belief of an element of the prosecutor's claim on that evidence," *State v. Virgin*, 2006 UT 29, ¶ 25, 137 P.3d 787, the magistrate may not engage in a wholesale weighing of "the totality of the evidence in search of the most reasonable inference," *Schmidt*, 2015 UT 65, ¶ 18 (citation and internal quotation marks omitted). Choosing between inferences, as well as weighing the credibility of all but the most unbelievable evidence, are tasks properly left "to the fact-finder at trial." *Id.*

¶10     In this case, the magistrate grounded his decision to decline bindover on Count 1 on a single fact: that the State presented no scientific evidence regarding the identity of the substance found in the baggie inside Homer's backpack. But the State introduced other circumstantial evidence regarding the identity of the substance. The officer testified that Homer was acting erratically and that he believed that Homer was under the

influence of drugs or alcohol. He observed Homer acting furtively, attempting to hide items (that turned out to be syringes) under the floor mats of the truck. A search of the truck revealed that Homer was in possession of baggies and syringes, both of which the officer testified were of the type typically used to package and administer methamphetamine. Finally, the officer gave his opinion that he believed the substance in question was in fact methamphetamine, and he explained that his opinion was based on his training and experience, the appearance of the substance, and the surrounding circumstances.

¶11 We conclude that, taken together, this evidence was sufficient to compel bindover. After reviewing the evidence presented by the State at the preliminary hearing, we are left with a reasonable belief that the crime of possession or use of methamphetamine was committed, and that Homer committed it. *See id.* ¶ 17. Undoubtedly, the State's case would have been stronger if it had included scientific evidence (field test results or, better yet, more definitive results from the State Crime Lab) that the substance found in Homer's backpack was in fact methamphetamine. But such scientific evidence is not a necessary condition, in every case, of bindover at the preliminary hearing stage.[1] It is certainly possible for the State to

---

1. We note that such evidence is not always a necessary condition for conviction at trial either. For example, convictions on drug charges have been upheld even in the absence of conclusive scientific evidence identifying the substance in question. *See Provo City Corp. v. Spotts*, 861 P.2d 437, 442–43 (Utah Ct. App. 1993) (holding that drug identity could be established through circumstantial evidence in appropriate cases, including through officer testimony, even in the absence of scientific evidence, and upholding a conviction in the absence of such evidence based on other circumstantial evidence); *see also State v. Kiriluk*, 1999 UT App 30, ¶ 18, 975 P.2d 469 (concluding that the "detective's opinion that [a] jar contained" a "precursor

(continued…)

present evidence sufficient for bindover in drug cases, even without chemical analysis of the substance in question. Whether bindover in the absence of scientific evidence regarding drug identity is appropriate in any given case will depend upon the strength of the other evidence, likely largely circumstantial, that the State is able to present at the preliminary hearing. In this case, however, the other evidence presented at the preliminary hearing was sufficient to constitute probable cause that Homer committed the crime with which she was charged in Count 1.

¶12    It will be up to the trial court and the factfinder to determine whether this evidence, if not bolstered by the State prior to trial, is enough to convict Homer of the crime beyond any reasonable doubt. We offer no opinion on that question. But the standard for bindover at a preliminary hearing is lower than the directed verdict standard that applies, upon motion, at trial. *Clark*, 2001 UT 9, ¶ 16. The evidence produced by the State at a preliminary hearing does not need to be sufficient to convict the defendant beyond a reasonable doubt. *Schmidt*, 2015 UT 65, ¶ 18. It only needs to be sufficient to constitute probable cause that the defendant committed the crime with which she was charged. And the evidence presented here meets that standard.

¶13    The magistrate's decision to decline bindover is reversed, and this case is remanded for further proceedings consistent with this opinion.

―――――――

(…continued)
to methamphetamine" was not prejudicial, even though field tests were "inconclusive").