*This opinion is subject to revision before final publication in the Pacific Reporter.*

**2013 UT 37**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Plaintiff and Petitioner,*

*v.*

WADE GARRETT MAUGHAN,
*Defendant and Respondent.*

No. 20120524
Filed June 25, 2013

On Certiorari to the Utah Court of Appeals

First District, Brigham City Dep't
The Honorable Kevin K. Allen
No. 091100106

Attorneys:

John E. Swallow, Att'y Gen., Christopher D. Ballard, Asst. Att'y Gen., Salt Lake City, for petitioner

Richard P. Mauro, Salt Lake City, for respondent

JUSTICE LEE authored the opinion of the Court, in which CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE NEHRING, JUSTICE DURHAM, and JUSTICE PARRISH joined.

JUSTICE LEE, opinion of the Court:

¶1    Wade Maughan confessed to helping Glenn Griffin commit murder. After being granted use immunity, Maughan was called as a witness at Griffin's murder trial. Maughan refused to testify and was charged with obstruction of justice.

¶2    At the preliminary hearing on that charge, the magistrate declined to bind Maughan over for trial, concluding that the State had failed to present evidence of the specific intent required by the obstruction of justice statute. The State appealed, and the court of appeals affirmed. We now reverse. Expounding on our recent

opinions clarifying the standard that governs the bindover decision on a preliminary hearing, we find that the evidence was sufficient to bind Maughan over for trial for obstruction of justice.

I

¶3   Brad Perry was murdered in 1984, but his case went unsolved for many years. In 2005, investigators became convinced that Glenn Griffin had been involved in the murder, based on DNA evidence. Law enforcement authorities began attempting to piece together the circumstances surrounding the murder.

¶4   As part of this process, they interviewed some of Griffin's friends, including defendant Wade Maughan. Maughan ultimately confessed to helping Griffin commit the murder, and the State charged both Griffin and Maughan with the crime.

¶5   The State determined to prosecute Griffin first, and sought to have Maughan testify against Griffin at his trial. Anticipating that Maughan would invoke his privilege against self incrimination and refuse to testify, the State offered him use immunity under Utah Code section 77-22b-1.

¶6   Maughan objected, citing concerns with the constitutionality of the Utah Immunity Act and with the scope of the protection afforded him under the Act. The district judge in the Griffin case overruled these objections, issuing an order compelling Maughan to testify. The order warned that a failure to comply might result in an order of contempt or prosecution for obstruction of justice.

¶7   Maughan again refused to testify. And he remained silent even after the court issued a series of subsequent orders reiterating its initial one. The State charged him with three counts of obstruction of justice under Utah Code section 76-8-306.

¶8   After a preliminary hearing, the magistrate judge refused to bind Maughan over for trial and dismissed the obstruction charges.[1] It did so on the basis of a finding that the State had failed to present "any evidence" that Maughan had acted with the specific intent required by the obstruction of justice statute—

---

[1] In so ruling, the magistrate also determined that Maughan could be charged with only a single count of obstruction. The State did not appeal this portion of the ruling.

"intent to hinder, delay, or prevent the . . . prosecution, conviction, or punishment of any person." UTAH CODE § 76-8-306(1).

¶9    Observing that Maughan had initially cooperated with law enforcement authorities prior to being charged with murder, the court concluded that Maughan's intent in refusing to testify was "to protect his Fifth Amendment and Utah Constitutional rights." Specifically, the magistrate found that "[a]ll the facts . . . support the inference that, notwithstanding the use immunity, Maughan still feared that his constitutional rights needed to be protected," such that the "only reasonable inference" was that Maughan had "refused to testify in order to protect his interests against the prosecution of himself for murder."

¶10   The State appealed, and the court of appeals affirmed. *See State v. Maughan*, 2012 UT App 121, ¶ 21, 276 P.3d 1258. As a threshold matter, the court of appeals disagreed with the magistrate's assessment that there were "*no facts* in evidence to suggest that [Maughan] had any intent to hinder . . . Griffin's prosecution," noting that evidence of a "prior friendship" between them "suggest[ed] a motive for so acting." *Id*. ¶ 16 (first alteration in original) (internal quotation marks omitted).[2] But the court none-

---

[2] The court explained the inference supported by this evidence:

> Maughan's early statement to police indicated that he had information pertinent to Griffin's prosecution, he was ordered by the court to be interviewed by the police and to testify at Griffin's trial, and he was given use immunity to protect him from the potentially harmful effects of complying with such orders. He then refused to cooperate with investigators or to testify, and the natural consequence of his refusal was to hinder Griffin's prosecution by withholding what he knew about the circumstances of the murder. Furthermore, his prior friendship with Griffin suggests a motive for so acting. This evidence thus arguably supports an inference that Maughan possessed the specific intent to accomplish the consequence of his actions, i.e., hindering Griffin's prosecution.

*State v. Maughan*, 2012 UT App 121, ¶ 16, 276 P.3d 1258.

theless determined that the State had failed to advance sufficient evidence of intent to obstruct. *Id.* ¶ 19.

¶11 The court of appeals concluded that the evidence strongly supported the contrary inference that Maughan had refused to testify based on his "strong[] focus[] on his own self-interest and self-preservation"—since "at virtually every procedural juncture of the case, Maughan expressed strong distrust that the grant of immunity would fully protect him from all possible consequences of any further statements made about his involvement in the murder." *Id.* ¶ 17. Thus, while "the State's inference [was] perhaps plausible" since "some portion of the evidence [was] arguably capable of supporting the State's asserted inference," the court determined that the inference was "speculative" because it was "contradicted and overwhelmed in light of the totality of the evidence." *Id.* ¶ 18. And since this determination purportedly left "only [one] reasonable inference"—that "Maughan acted with the intent to protect himself"—the court of appeals affirmed. *Id.* ¶¶ 18, 21 (emphasis omitted).

¶12 The State filed a petition for certiorari, which we granted. We apply a de novo standard of review in assessing the court of appeals' decision, recognizing that the correctness of its decision turns in part on whether it applied an appropriate standard of review in affirming the magistrate's decision, and that a magistrate's bindover decision is a mixed determination that is entitled to some limited deference. *See State v. Ramirez*, 2012 UT 59, ¶ 7, 289 P.3d 444.

II

¶13 Maughan was charged with obstruction of justice for concealing unprivileged information concerning a criminal offense in contravention of an order to provide it. UTAH CODE § 76-8-306(1)(i). In Utah this is a crime of specific intent. It requires proof of "intent to hinder, delay, or prevent the investigation, apprehension, prosecution, conviction, or punishment of any person regarding conduct that constitutes a criminal offense." *Id.* § 76-8-306(1). The question before us is whether the State presented enough evidence of specific intent to bind Maughan over for trial. We find that it did, and reverse the court of appeals' contrary conclusion. In so doing, we agree with the court of appeals that there was some evidence sustaining an inference of intent to hinder

Griffin's prosecution, but find no room in the liberal bindover standard for second-guessing the reasonableness of that inference.

¶14 To bind a defendant over for trial, the prosecution is required only to "produce believable evidence of all the elements of the crime charged," *State v. Clark,* 2001 UT 9, ¶ 15, 20 P.3d 300 (internal quotation marks omitted), or, in other words, "evidence sufficient to support a reasonable belief that the defendant committed the charged crime," *Ramirez,* 2012 UT 59, ¶ 9, 289 P.3d 444 (internal quotation marks omitted). The magistrate, moreover, must "view all evidence in the light most favorable to the prosecution and must draw all reasonable inferences in favor of the prosecution." *Clark,* 2001 UT 9, ¶ 10 (internal quotation marks omitted). This is a lenient standard. An inference is reasonable unless it falls "to a level of inconsistency or incredibility that no reasonable jury could accept it." *Ramirez,* 2012 UT 59, ¶ 14 (internal quotation marks omitted).

¶15 We conclude that the State satisfied this standard here. It carried its burden of producing believable evidence that Maughan had been Griffin's friend and thus may have sought to prevent his conviction. Such evidence provided some indication that Maughan had a motive to prevent Griffin's prosecution and conviction. And because evidence of motive is often employed circumstantially to establish specific intent, *see State v. Smith*, 728 P.2d 1014, 1016 (Utah 1986) ("Proof of guilty knowledge, like proof of intent, is usually circumstantial . . . . Evidence of motive is generally relevant circumstantial evidence of state of mind."),[3] the evidence of a friendship between Maughan and Griffin sup-

---

[3] *See also State v. James,* 819 P.2d 781, 789, 792 (Utah 1991) ("It is well established that intent can be proven by circumstantial evidence. Indeed, unless a confession is made by the defendant concerning intent, or unless the court is somehow able to open the mind of the defendant to examine his motivations, intent is of necessity proven by circumstantial evidence. . . . [T]he jury could infer that defendant was not caring in his attitude toward the child and that he viewed the child as an obstacle to his happiness . . . . This could reasonably have been viewed by the jury as sufficient evidence of a motive to do away with the child and used to infer defendant's intent to do so.").

ported a reasonable inference that Maughan wished to impede Griffin's prosecution.[4]

¶16 The court of appeals acknowledged this inference as "plausible"—and noted that the logical "path" to it was "simple"—but nonetheless rejected it as "contradicted and overwhelmed" by evidence of the contrary inference that Maughan was "intensely absorbed" in protecting his rights in defending against the murder charge against him. *State v. Maughan*, 2012 UT App 121, ¶¶ 16–18, 276 P.3d 1258. In so doing, however, the court of appeals overstepped the bounds of the liberal bindover standard. It rendered its own assessment of the most reasonable inference to be drawn from the evidence instead of asking whether the evidence could reasonably sustain the inference proposed by the prosecution.

¶17 It may be "reasonable to infer that Maughan was intensely absorbed . . . in doing everything necessary and possible to defend against the capital murder charge." *Id.* ¶ 17. And it may be arguable that the "totality of the evidence" even weighs in favor of the conclusion that "Maughan acted with the intent to protect himself." *Id.* ¶ 18. But our bindover standard does not call for an evaluation of the totality of the evidence in search of the most reasonable inference to be drawn therefrom. It instead asks only whether the evidence could support a reasonable jury's decision to convict, through a lens that "view[s] all evidence in the light most favorable to the prosecution." *Clark*, 2001 UT 9, ¶ 10 (internal quotation marks omitted).

---

[4] Maughan attacks this inference on preservation grounds, asserting that "[t]here was no evidence presented to the magistrate that Mr. Maughan's motive in not answering questions was to protect Glenn Griffin." We disagree. The State referred to Maughan's "connection with Glenn Griffin" in arguing that it had satisfied its burden of demonstrating intent. And the State supported this argument with the transcript of Maughan's confession. This transcript was introduced as an exhibit before the magistrate, and he ultimately "reviewed" and "considered" it in reaching his decision. It reveals that Maughan had admitted he "was close friends with Glen[n] [Griffin]" and that he may have blocked the events of the murder out of his mind "to keep Glen[n] [Griffin] from getting in more trouble" because "you want to try to help your friends the best you can."

¶18 Under this standard, we see no way to dismiss the inference proposed by the prosecution as "simply speculative." *Maughan*, 2012 UT App 121, ¶ 18. The court of appeals did so based on the ample support for a contrary inference that it found in the record. Because Maughan consistently "expressed strong distrust that the grant of immunity would fully protect him," and did so "at virtually every procedural juncture of the case," the court of appeals deemed the "totality of the evidence" to sustain only one reasonable inference. *Id.* ¶¶ 17–18. The conclusion does not follow from the premise, however.

¶19 First, the defense's view of the evidence is not obviously the more reasonable one. The immunity afforded Maughan by the State broadly foreclosed any use of his testimony "in any criminal or quasi-criminal" proceeding. UTAH CODE § 77-22b-1(2). And this protection extended to "any information directly or indirectly derived from th[at] testimony." *Id.* A jury could accordingly discount Maughan's professed "distrust" as mere pretext—as cover for his true motive of protecting his friend.[5] And such a finding would turn the court of appeals' assessment of the parties' proposed inferences on its head, deeming the State's more reasonable and dismissing Maughan's as unfounded.

¶20 Second, it would also be open to the jury to accept both of the parties' positions. We do not, in other words, view the State's and Maughan's proposed inferences as mutually exclusive. Maughan could have acted *both* to protect himself against prosecution and to hinder Griffin's conviction. And a jury finding that he did would be enough to sustain a conviction on obstruction of justice, as even a mixed motive would still encompass a finding of specific intent to obstruct. *See* UTAH CODE § 76-8-306(1) (obstruc-

---

[5] That is not to say it would necessarily do so. The immunity grant was broad, but—as Maughan points out—it did not afford him absolute protection, as it did "not extend to prosecution or punishment for perjury or to giving a false statement in connection with any testimony." UTAH CODE § 77-22b-1(2). Thus, despite the immunity grant, a reasonable jury might believe Maughan's assertion that he acted only to protect his self-interest. This, however, does not foreclose bindover, which requires that all reasonable inferences be drawn in favor of the prosecution. *See supra* ¶ 14.

tion of justice defined to encompass obstructive acts "with intent to hinder, delay, or prevent" prosecution).

¶21 Reasonable minds could differ on the factual matters before us. Perhaps a jury would ultimately agree with Maughan, concluding that "the only reasonable inference to be drawn from the totality of the evidence is that Maughan acted in his own self-interest" and not to hinder the prosecution of his friend Griffin. *Maughan*, 2012 UT App 121, ¶ 20. But in our view the magistrate and the court of appeals jumped the gun in rendering their own assessment of these issues. *See Ramirez*, 2012 UT 59, ¶ 10 (explaining that the assessment of whether a reasonable inference exists "does not encompass an assessment of whether such inference is more plausible than an alternative that cuts in favor of the defense" since "[t]hat is a matter of factfinding, which is left for the jury at trial"). We accordingly reverse and remand with a mandate to bind Maughan over for trial on a single count of obstruction of justice. *See id.* ¶ 17.

_____