**2019 UT App 210**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellant,
*v.*
TYLER A. NIHELLS,
Appellee.

Opinion
No. 20180678-CA
Filed December 27, 2019

Third District Court, Salt Lake Department
The Honorable Andrew H. Stone
No. 181903545

Sean D. Reyes and Jeffrey D. Mann, Attorneys
for Appellant

Sarah Carlquist, Attorney for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which
JUDGES DAVID N. MORTENSEN and DIANA HAGEN concurred.

ORME, Judge:

¶1     Having determined that the State had not presented
sufficient evidence at a preliminary hearing to establish probable
cause to believe that defendant Tyler A. Nihells committed two
drug-related offenses, the magistrate declined to bind him over
for trial on either charge. The State appeals, and we reverse.

## BACKGROUND[1]

¶2     Prompted by an expired registration, a state trooper (Trooper) pulled over a vehicle containing two occupants: Nihells, the driver, and Thomas A. Burzak Jr., the passenger and owner of the vehicle. After obtaining a driver license from each of them, Trooper asked Nihells to accompany him to his patrol car while he ran a records check. Trooper also approached Burzak, who declined to speak with Trooper. Burzak was nervous, "breathing really heavily and just seemed uneasy."

¶3     As soon as Trooper and Nihells were in the patrol car, Trooper immediately "noticed a strong odor of marijuana emitting from [Nihells]." Trooper later described Nihells's demeanor as "overly nervous" and "uneasy with [Trooper's] presence." Trooper also testified that Nihells avoided eye contact and was "breathing heavily." Trooper noted that Nihells's "carotid artery was pumping in his neck." Nihells told Trooper that he and Burzak were returning home from San Francisco, where they had spent a few weeks visiting friends. He also told Trooper that they were both unemployed and "had been for an amount of time," but they had been able to pay for the trip with savings. When Trooper informed Nihells that he "could smell marijuana," Nihells explained that "it was probably coming from his clothes." Trooper asked whether "he had used recently," and Nihells answered that "it had been a little bit—a little while." But Nihells denied having any marijuana on his person, and Trooper did not search him.

---

1. "In reviewing a magistrate's bindover decision, we view all evidence in the light most favorable to the prosecution," "draw all reasonable inferences in favor of the prosecution," and "recite the facts with that standard in mind." *State v. Clyde*, 2019 UT App 101, ¶ 2 n.1, 444 P.3d 1151 (quotation simplified).

¶4 While still waiting for dispatch to respond on the records check Trooper requested, he deployed his canine around Burzak's vehicle. The canine alerted on both the front passenger's and driver's side doors, but it did not alert on the trunk. Prior to conducting a physical search of the vehicle with two other troopers who had arrived on the scene, Trooper asked Nihells and Burzak whether the contents of the vehicle belonged to them, and they "said everything belonged to them."[2]

¶5 A search of the car revealed "two backpacks that were stuffed in the front of the trunk completely surrounded by other belongings." In the backpacks, Trooper found "11 packages of marijuana" with a cumulative weight of 11.15 pounds. Based on Trooper's training and experience, he testified that this represented a distributable amount. The search also revealed "marijuana fragments throughout the car and some rolling papers." Trooper did not ask who owned the backpacks, which did not contain any tags or other markings identifying their owner. Based on both Nihells's and Burzak's presence in the vehicle and their prior comments confirming ownership of all the car's contents, Trooper assumed that the backpacks belonged to both of them and placed the two under arrest.

¶6 The State charged Nihells and Burzak with one count each of possession of a controlled substance with intent to distribute and possession of drug paraphernalia. A district court judge, acting as a magistrate, held a joint preliminary hearing, at which Trooper was the only witness to testify. Following

---

2. Trooper did not recall the exact wording of his question or whether he posed it to Nihells and Burzak together or to each separately. But he testified that he "typically do[es] that separate," and "typically will ask . . . about the vehicle and . . . does everything in the vehicle belong to you." Trooper also acknowledged that the question "presumes that they know exactly what's in the vehicle."

Trooper's testimony, Burzak's counsel argued that insufficient evidence supported bindover on the charges against his client because "this is a construct[ive] possession case where it's multiple passengers in the vehicle and it seems with [Burzak] all the state has been able to present has been mere presence" of marijuana and rolling papers because no contraband was "near [Burzak's] immediate control or where he had immediate access." He also argued that Nihells's and Burzak's answer to Trooper's "blanket question" of whether they owned everything in the vehicle was insufficient to establish the element of intent. Nihells's counsel "join[ed] most [of] those comments" and argued that "there's simply nothing tying [Nihells] to those backpacks." The State responded, asserting that the totality of the evidence, when viewed "in the light most favorable to the state," supported bindover for both defendants.

¶7     The magistrate concluded there was "[n]o probable cause as to any of the charges" because "it's probably a legal impossibility for each of [the defendants] to own everything in the vehicle" and "[t]here isn't anything tying either defendant to the materials found in the trunk." He stated that the "vague reference to fragments [of marijuana] without any quantification or location within the car other than to say it's throughout the car" was insufficient to establish knowledge and that "[o]dor by itself doesn't reflect knowledge of the contraband being there or raise an inference of that." The magistrate also determined that "nervousness" does not raise an inference of guilt. Accordingly, the magistrate declined to bind either defendant over for trial on either charge.

¶8     The State appeals the magistrate's denial of bindover for Nihells.[3] *See* Utah Code Ann. § 77-18a-1(3)(a) (LexisNexis 2017).

---

3. The State also challenges the magistrate's denial of bindover for Burzak in a separate appeal, *see State v. Burzak*, 2019 UT App

(continued…)

ISSUE AND STANDARD OF REVIEW

¶9 The State argues that the magistrate erroneously concluded that insufficient evidence supported bindover for possession of a controlled substance with intent to distribute and for possession of drug paraphernalia. "[B]indover determinations are mixed questions of law and fact." *State v. Schmidt*, 2015 UT 65, ¶ 13, 356 P.3d 1204. And although "we grant some deference" to a magistrate's bindover ruling, "any departure from the correct legal standard will always exceed" the magistrate's "limited discretion" to rule in such matters. *Id.* (quotation simplified).

ANALYSIS

¶10 Preliminary hearings present an opportunity for "magistrates to ferret out groundless and improvident prosecutions without usurping the jury's role as the principal fact-finder." *State v. Schmidt*, 2015 UT 65, ¶ 19, 356 P.3d 1204 (quotation simplified). Thus, to support bindover of a criminal defendant for trial, the State must satisfy the "relatively low" probable cause standard. *Id.* ¶ 17 (quotation simplified). *See* Utah R. Crim. P. 7B(b); *State v. Maughan*, 2013 UT 37, ¶ 14, 305 P.3d 1058 (referring to probable cause as "a lenient standard"). To establish probable cause, all that is required is "that there is evidence that could sustain a reasonable inference in the prosecution's favor on each element of the crime(s) in question." *State v. Ramirez*, 2012 UT 59, ¶ 10, 289 P.3d 444.

---

(…continued)
211, which denial we likewise reverse for essentially the same reasons articulated in the current appeal, *see id.* ¶ 2. For efficiency's sake, in *Burzak* we address only Burzak's arguments made in addition to the arguments Nihells advances in this appeal. *Id.*

¶11    At this stage of a criminal proceeding, the State need not "eliminate alternative inferences that could be drawn from the evidence in favor of the defense," *id.* ¶ 9, and in reaching a bindover decision, magistrates must refrain from assessing "whether [the State's] inference is more plausible than an alternative that cuts in favor of the defense," *id.* ¶ 10. Instead, magistrates "must view all evidence in the light most favorable to the prosecution and must draw all reasonable inferences in favor of the prosecution," *Maughan*, 2013 UT 37, ¶ 14 (quotation simplified), and "may disregard evidence as incredible only where it is so contradictory, inconsistent, or unbelievable that it is unreasonable to base belief of an element of the prosecutor's claim on that evidence," *Schmidt*, 2015 UT 65, ¶ 31 (quotation simplified).

¶12    Denial of bindover is appropriate "only where the facts presented by the prosecution provide no more than a basis for speculation." *State v. Jones*, 2016 UT 4, ¶ 13, 365 P.3d 1212 (quotation simplified). In other words, denial of bindover is appropriate only when "there is no underlying evidence to support the conclusion" of probable cause. *Salt Lake City v. Carrera*, 2015 UT 73, ¶ 12, 358 P.3d 1067. *See id.* ("[T]he difference between an inference and speculation depends on whether the underlying facts support the conclusion.").

¶13    To support bindover for possession of a controlled substance with intent to distribute, the State had the burden of establishing probable cause to believe that Nihells "knowingly and intentionally . . . possess[ed] a controlled or counterfeit substance with intent to distribute." Utah Code Ann. § 58-37-8(1)(a) (LexisNexis Supp. 2019).[4] And for possession of

---

4. Because the statutory provisions in effect at the relevant time do not differ in any way material to our analysis from those now in effect, we cite the current version of the Utah Code for convenience.

drug paraphernalia, the State had the burden of establishing probable cause to believe that Nihells "possess[ed] with intent to use, drug paraphernalia to . . . introduce a controlled substance into the human body." *Id.* § 58-37a-5(1)(a) (2016). Importantly, contraband may be possessed either individually or jointly with others.[5] *See id.* § 58-37-2(1)(ii).

¶14   At issue in the current case is whether the State established probable cause to believe that Nihells was in constructive possession of the marijuana and the rolling papers. "To prove that a defendant was in knowing and intentional possession of a controlled substance, the prosecution need only establish that the produced contraband was found in a place or under circumstances indicating that the accused had the ability and the intent to exercise dominion and control over it." *State v. Hansen*, 732 P.2d 127, 132 (Utah 1987) (per curiam). *See* Utah Code Ann. § 58-37-2(1)(ii) ("For a person to be a possessor or user of a controlled substance, . . . it is sufficient if it is shown that . . . the controlled substance is found in a place or under circumstances indicating that the person had the ability and the intent to exercise dominion and control over it."). Having reviewed the evidence presented at the preliminary hearing, we conclude that the State satisfied the lenient probable cause standard to support bindover for trial on each charge.[6]

---

5. Unlike chapter 37, chapter 37a—the chapter prohibiting the possession of drug paraphernalia—does not define "possession." But courts have generally treated the term to be the same as for "possession" of controlled substances as used in chapter 37. *See, e.g.*, *State v. Ashcraft*, 2015 UT 5, ¶¶ 16, 19, 349 P.3d 664; *State v. Ramirez*, 2012 UT 59, ¶ 11 & n.2, 289 P.3d 444; *State v. Layman*, 1999 UT 79, ¶ 13, 985 P.2d 911.

6. Nihells argues that the State failed to carry its burden of persuasion as concerns the possession-of-paraphernalia charge

(continued…)

¶15    The Utah Supreme Court has repeatedly stated that the probable cause standard applied at preliminary hearings is identical to the probable cause standard applied on review of arrest warrants, *see, e.g.*, *Jones*, 2016 UT 4, ¶ 12; *Schmidt*, 2015 UT 65, ¶ 17; *Ramirez*, 2012 UT 59, ¶ 9, and has specifically declined to distinguish one standard from the other, *see State v. Clark*, 2001 UT 9, ¶ 16, 20 P.3d 300. Accordingly, at the preliminary hearing stage of criminal proceedings, we ask "simply whether a reasonable officer, viewing the evidence in the light most favorable to the prosecution, could possibly conclude that each element of the offense in question was committed by the defendant." *Jones*, 2016 UT 4, ¶ 42. *See id.* ¶ 22. And employing this standard, the United States Supreme Court held that a police officer had probable cause to arrest a defendant under circumstances quite similar to those in this case. *See Maryland v. Pringle*, 540 U.S. 366, 371–72 (2003).

¶16    In *Pringle*, a police officer stopped a speeding vehicle that contained defendant Pringle, who was sitting in the front passenger seat, and two other men. *Id.* at 368. A subsequent search of the car revealed $763 in cash in the glove compartment and five baggies of cocaine behind the back-seat armrest. *Id.*

---

(…continued)

because it did not analyze the charge independently from the possession-with-intent-to-distribute charge. But Nihells has not distinguished possession—the element at issue on appeal—of the paraphernalia (rolling papers) from that of the controlled substance (marijuana) with intent to distribute. Indeed, as previously noted, courts have generally treated the possession elements of both offenses to be one and the same. *See supra* note 5. Accordingly, the State's argument that, based on the evidence, "[i]t was reasonable to infer that each of the defendants . . . individually or jointly possessed . . . the drug paraphernalia" does not fail on the ground that it lumped together its constructive possession analysis for both charges.

When none of the occupants admitted to ownership of the drugs, the officer arrested all three. *Id.* at 368–69. The Supreme Court held that the officer had probable cause to arrest Pringle. It stated that under those circumstances—i.e., where he was one of three occupants of a vehicle containing cash in the glove compartment and cocaine in a location "accessible to all three men," and where all three denied ownership of the contraband, *id.* at 371–72—it was "an entirely reasonable inference from these facts that any or all three of the occupants had knowledge of, and exercised dominion and control over, the cocaine," *id.* at 372, thereby satisfying the required showing of constructive possession for probable cause purposes.

¶17    Similarly, in the case at hand, Trooper arrested Nihells and Burzak because the two were the sole occupants of a vehicle containing scattered marijuana fragments[7] and rolling papers in the vehicle's interior and more than eleven pounds of marijuana in the trunk. Moreover, both claimed ownership of everything in the vehicle. And as in *Pringle*, neither occupant claimed

---

7. The magistrate minimized the significance of the marijuana fragments, referring to it as "vague references . . . without any quantification or location within the car other than to say it's throughout the car." But Trooper testified that his canine alerted to marijuana on the driver's and front passenger's side doors, thereby indicating that the fragments were at the very least located in the two locations where the defendants were seated. And we struggle to see how further explanation about the marijuana fragments would affect the probable cause finding because the fragments were not the basis for the possession-with-intent-to-distribute charge. Their evidentiary relevance is tied to supporting an inference that Nihells and Burzak were aware of the drugs in their trunk and that the rolling papers were used as drug paraphernalia rather than for smoking tobacco. As such, even a miniscule amount would be relevant.

exclusive ownership of the contraband. Furthermore, in addition to the considerations discussed in *Pringle*, Nihells was "overly nervous," strongly smelled of marijuana, and admitted to recent marijuana use.[8]

---

8. At the preliminary hearing, the magistrate stated that "nervousness" does not raise an inference of guilt. While the magistrate is right about run-of-the-mill nervousness—our Supreme Court has pointed out that "it is not uncommon for drivers and passengers alike to be nervous and excited" when pulled over by law enforcement, *see State v. Schlosser*, 774 P.2d 1132, 1138 (Utah 1989)—such factors are not properly viewed in isolation. Rather, they should be evaluated as part of the totality of the circumstances. *See Maryland v. Pringle*, 540 U.S. 366, 371 (2003) ("The probable-cause standard . . . depends on the totality of the circumstances."); *State v. Roberts*, 2018 UT App 92, ¶ 8, 427 P.3d 416 ("Probable cause determinations are governed by a totality-of-the-circumstances analysis.") (quotation simplified). *See also State v. Yoder*, 935 P.2d 534, 541 (Utah Ct. App. 1997) ("Although defendant's nervous or suspicious behavior is insufficient by itself to establish probable cause, it may . . . be considered in conjunction with other relevant and objective facts.").

Much the same analysis applies to the magistrate's statement that "[o]dor by itself doesn't reflect knowledge of the contraband being there or raise an inference of that." Although we express some doubt as to the accuracy of the statement, *see State v. Spurgeon*, 904 P.2d 220, 227 (Utah Ct. App. 1995) ("Probable cause for arrest may arise from an officer's sense of smell.") (quotation simplified), the magistrate's reasoning fails in any event because the odor should have been viewed in light of the totality of the circumstances—i.e., the odor *plus* the marijuana fragments, the rolling papers, Nihells's admission to recent marijuana use, Nihells's and Burzak's statements that they

(continued…)

¶18    Nihells argues that the marijuana was "not accessible to all the passengers like [it was] in *Pringle*" because Trooper found the marijuana in the trunk, as opposed to the passenger compartment of the vehicle, and the State did not present "evidence that he could access the trunk without [Burzak's] permission or without [Burzak's] keys to the car." But Nihells overlooks the facts that he was driving the vehicle at the time Trooper pulled him and Burzak over and that he was therefore in possession of the keys. In that context, it is entirely reasonable to infer, at least for probable cause purposes, that Nihells had access to the trunk and constructively possessed the drugs either individually or jointly with Burzak. *Cf. State v. Harding*, 2011 UT 78, ¶ 35, 282 P.3d 31 (stating, in the context of discussing the apparent authority of a person to consent to a search of another's property, that "the trunk of a vehicle . . . is typically controlled only by the driver"). And this inference is further bolstered by the facts that (1) his belongings were located in the trunk; (2) along with Burzak, he stated that he owned everything in the vehicle; (3) he and Burzak were on a long trip together; (4) he was unusually nervous; (5) he smelled of marijuana; (6) the passenger compartment of the car contained rolling papers and marijuana fragments; and (7) he admitted to recently using marijuana.

¶19    Nihells further argues that this case is distinguishable from *Pringle* because "Trooper never asked Nihells or [Burzak] who the drugs in the trunk belonged to but in *Pringle* the officer did." And because all three men in *Pringle* denied possession of the drugs, Nihells asserts that the officer "could reasonably infer that at least one of the passengers was lying about who owned the drugs." But here, Nihells argues, Trooper's question whether he and Burzak owned everything in the car assumed that Nihells

―――――――――――――――

(…continued)
owned everything in the vehicle, and their nervous demeanors—not "by itself."

knew what was in the trunk, and therefore their answers could not support a reasonable inference of constructive possession. We do not read *Pringle* as narrowly as Nihells does. We view both cases as situations in which none of the occupants claimed exclusive possession of the discovered contraband. In *Pringle*, none of the three occupants offered information concerning ownership of the contraband. In the current case, both occupants stated that they owned all of the vehicle's contents.[9] And after discovery of the 11.15 pounds of marijuana, nothing prevented either occupant from claiming or denying exclusive ownership of the contraband. Furthermore, the Supreme Court stated in *Pringle* that law enforcement may reasonably infer that passengers in a vehicle are engaged in a common drug-dealing enterprise, unless the guilty person is somehow singled out. *See* 540 U.S. at 373–74. *See also State v. Burzak*, 2019 UT App 211, ¶ 8. And as previously discussed, although Nihells did not deny possessing the marijuana, the odor emanating from Nihells as

---

9. The magistrate was mistaken in characterizing joint ownership of the vehicle's contents as "probably a legal impossibility." In reaching bindover decisions, magistrates "must view all evidence in the light most favorable to the prosecution and must draw all reasonable inferences in favor of the prosecution." *State v. Maughan*, 2013 UT 37, ¶ 14, 305 P.3d 1058 (quotation simplified). Under this standard, the magistrate should have construed the statement that Nihells and Burzak owned everything in the vehicle—including the backpacks—to mean not that all items in the car were owned by them jointly but that all items in the car were owned by them collectively, i.e., they were not hauling items to be delivered to another when they were back home, they had not retrieved something from the roadside that they hoped to reunite with its rightful owner, and they had not dropped off a friend in Reno only to discover hours later that he inadvertently left his briefcase in the car. That said, it is not beyond the realm of possibility that the two had jointly purchased the car's contents for their shared journey.

well as the paraphernalia and traces of marijuana found throughout the vehicle's interior are more than sufficient to support a reasonable inference of his possession of the marijuana for bindover purposes.

CONCLUSION

¶20    We hold that the magistrate exceeded his discretion by not applying a totality-of-the-circumstances analysis, in the course of which he should have "draw[n] all reasonable inferences in favor of the prosecution," *see State v. Maughan*, 2013 UT 37, ¶ 14, 305 P.3d 1058 (quotation simplified), and instead concluding that there was not "anything tying either defendant to the materials found in the trunk." The totality of the evidence presented by the State at the preliminary hearing was sufficient to sustain the lenient probable cause standard to support bindover of Nihells for trial on both charges. We accordingly reverse the magistrate's decision and remand with instruction to bind Nihells over for trial on both charges.

—————