**2019 UT App 211**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellant,
*v.*
THOMAS A. BURZAK JR.,
Appellee.

Opinion
No. 20180679-CA
Filed December 27, 2019

Third District Court, Salt Lake Department
The Honorable Andrew H. Stone
No. 181903550

Sean D. Reyes and Jeffrey D. Mann, Attorneys
for Appellant

Brett J. DelPorto, Attorney for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which
JUDGES DAVID N. MORTENSEN and DIANA HAGEN concurred.

ORME, Judge:

¶1 Thomas A. Burzak Jr. and his travel companion, Tyler A. Nihells, were arrested by a state trooper (Trooper) and charged with one count each of possession of a controlled substance with intent to distribute and possession of drug paraphernalia. At their joint preliminary hearing, a district court judge, acting as a magistrate, declined to bind either defendant over for trial on the ground that the State had not provided sufficient evidence supporting a determination of probable cause on the element of constructive possession for each crime. In this appeal, the State challenges the magistrate's decision as concerns Burzak.

¶2 A detailed recounting of the facts of this case and a discussion of the probable cause standard governing bindover is

provided in this appeal's companion case, *State v. Nihells*, 2019 UT App 210, in which the State challenged the magistrate's denial of bindover for Nihells, Burzak's co-defendant. Although we reverse the magistrate's decision in the current appeal for essentially the same reasons articulated in *Nihells*, additional arguments raised by Burzak merit comment.

¶3      Burzak argues that his case is distinguishable from *Maryland v. Pringle*, 540 U.S. 366 (2003), which is pivotal in our resolution of both cases, *see Nihells*, 2019 UT App 210, ¶¶ 15–19, because (1) the marijuana was not accessible to Burzak and Nihells and (2) the evidence proffered by the State singled out Nihells, thereby shifting the probable cause analysis away from Burzak. We address each argument in turn.

¶4      Burzak first argues that "*Pringle* would be directly applicable [to his case] only if the marijuana in the trunk was somehow within reach of Burzak and Nihells." *See* 540 U.S. at 371–72 (listing the fact that the cocaine was "accessible to all three men" occupying the vehicle as one of the reasons it was "entirely reasonable" to infer "that any or all three of the occupants had knowledge of, and exercised dominion and control over, the cocaine"). And because Trooper found the marijuana in the trunk and not the passenger compartment of the vehicle, as was the case in *Pringle*, *see id.* at 368, the contraband "was not accessible to Burzak or Nihells—not, at least, without stopping the car and getting out."

¶5      But *Pringle* does not require that the contraband be "within reach" of the vehicle's occupants to be accessible, as Burzak argues. Indeed, the Supreme Court held that it was reasonable to infer that all three of the vehicle's occupants, including the driver, "had knowledge of, and exercised dominion and control over, the cocaine," *id.* at 372, which was located "between the back-seat armrest and the back seat," *id.* at 368. Because the driver would not have been within reach of the drugs while he was driving, we read *Pringle* to require only that

the occupants of the vehicle have general access to the area of the vehicle in which the contraband is discovered. And Burzak, by virtue of owning the vehicle, had access to the contents of the trunk—which access he acknowledges he "presumably" had. *See also Nihells*, 2019 UT App 210, ¶ 18 (stating that "it is entirely reasonable to infer that Nihells," the driver in possession of the keys to the vehicle, "had access to the trunk and constructively possessed the drugs either individually or jointly with Burzak").

¶6     Next, Burzak argues that under *United States v. Di Re*, 332 U.S. 581 (1948)—discussed and distinguished in *Pringle*, 540 U.S. at 373–74—there is no probable cause to believe he was in possession of the marijuana because the evidence proffered by the State singled out Nihells as the guilty party. In *Di Re*, an informant notified a federal investigator that he had arranged to buy counterfeit gasoline ration coupons from the driver of a vehicle at a specified location. 332 U.S. at 583. The investigator followed the vehicle and approached it after it had stopped at the aforementioned location. The investigator found the driver, the informant, and defendant Di Re inside the vehicle. *Id.* The informant was holding two counterfeit coupons in his hand, and when asked about them, he said he had obtained them from the driver. The informant did not implicate Di Re in any way. *Id.* The investigator took all three men into custody and a later search of Di Re revealed one hundred counterfeit coupons "in an envelope concealed between his shirt and underwear," *id.*, and Di Re was subsequently convicted of possession of counterfeit gasoline ration coupons, *id.* at 582. The Second Circuit reversed Di Re's conviction, and the Supreme Court affirmed. *Id.* at 582, 595. The Supreme Court held that the search of Di Re was not justified as a search incident to arrest because the investigator lacked probable cause to believe that Di Re was involved in the crime at the time of his arrest. The Court stated: "Any inference that everyone on the scene of a crime is a party to it must disappear if the Government informer singles out the guilty person." *Id.* at 594. In *Pringle*, the Supreme Court distinguished *Di Re* because

"[n]o such singling out occurred in [*Pringle*]; none of the three men provided information with respect to the ownership of the cocaine or money" as the informant had done in *Di Re*. 540 U.S. at 374.

¶7    Relying on *Di Re*, Burzak argues that "the evidence proffered by the State 'singles out' co-defendant Nihells and, by implication shifts the probable cause calculus away from [him]." Specifically, Trooper testified at the preliminary hearing that he detected "a strong odor of marijuana emitting from [Nihells's] person," and after asking him about it, Nihells stated that the smell "was probably coming from his clothes" and admitted to recently using marijuana. Additionally, Nihells was "overly nervous," was "breathing heavily," and "avoided eye contact"; "his carotid artery was pounding in his neck," and he "just seemed uneasy with [Trooper's] presence." Based on this, Burzak contends that "the probable cause analysis points almost exclusively at Nihells," and "there [was] nothing to support probable cause" to believe that Burzak was also engaged in criminal activity. We disagree.

¶8    As an initial matter, the Supreme Court expressly stated in *Pringle* that "it was reasonable for the officer to infer a common enterprise among the three men" because the officers uncovered sufficient facts to suspect drug dealing and "a dealer would be unlikely to admit an innocent person with the potential to furnish evidence against him." 540 U.S. at 373. *See id.* ("'[A] car passenger . . . will often be engaged in a common enterprise with the driver, and have the same interest in concealing the fruits or the evidence of their wrongdoing.'") (quoting *Wyoming v. Houghton*, 526 U.S. 295, 304–05 (1999)). Here, Trooper uncovered more than eleven pounds of marijuana. Based on his training and experience, he testified that this was a distributable amount rather than a quantity consistent with personal use. As such, Burzak's presence in the vehicle with Nihells is sufficient to suggest a common enterprise between the two, especially given their joint travels on a long trip. And as in

*Pringle*, no "singling out occurred" in this case because neither occupant "provided information with respect to [exclusive] ownership of the [contraband]," as the informant had done in *Di Re*. *See id.* at 374.

¶9    Furthermore, Burzak contradicts his own assertion that "nothing" in the State's evidence supported a finding of probable cause against him by acknowledging that he "owned the vehicle; he was in the car when the drugs were found . . . ; and he presumably had access to the trunk." *See State v. Workman*, 2005 UT 66, ¶ 32, 122 P.3d 639 (listing "ownership and/or occupancy of the . . . vehicle where the drugs were found, presence of defendant at the time drugs were found, defendant's proximity to the drugs, previous drug use, [and] incriminating statements or behavior" as some of the factors that "may be important in determining whether" there is a nexus sufficient to convict a defendant for constructive possession of the drugs). And in addition to these admissions, (1) Trooper's canine alerted on the front passenger's side door next to where Burzak had been sitting, (2) Trooper found fragments of marijuana and rolling papers throughout the vehicle, (3) the backpacks were comingled with Burzak's and Nihells's belongings, (4) Burzak and Nihells claimed ownership of everything in the vehicle, and (5) Trooper testified that Burzak "was breathing really heavily and just seemed uneasy." When viewing these facts in their totality, it is not unreasonable to infer that Burzak possessed the drugs either individually or jointly with Nihells, even though certain factors may point more strongly toward Nihells. Accordingly, Burzak has not shown any meaningful distinction between *Pringle* and the facts of this case.

¶10    For these reasons and the analysis set forth in in *State v. Nihells*, 2019 UT App 210, we reverse the magistrate's decision and remand with instructions to bind Burzak over for trial on both charges.

_____