2026 UT App 49

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellant,
*v.*
DAVID ELLIOTT,
Appellee.

Opinion
No. 20240990-CA
Filed April 2, 2026

Fifth District Court, St. George Department
The Honorable Jay Winward
No. 241500111

Derek E. Brown and Michael Gadd,
Attorneys for Appellant

JUDGE GREGORY K. ORME authored this Opinion, in which
JUDGES DAVID N. MORTENSEN and JOHN D. LUTHY concurred.

ORME, Judge:

¶1      A district court judge, sitting as a magistrate, declined to bind David Elliott over for trial on one count each of attempted forcible sexual abuse, forcible sexual abuse, and rape. The State appeals, arguing that it presented sufficient evidence at the preliminary hearing to establish probable cause that Elliott committed each charged offense. Because Elliott has not filed a brief or otherwise appeared in this appeal, we apply a lower standard of review than we ordinarily do in bindover cases. And because the State has satisfied this lower standard, we reverse the

magistrate's denial and remand the case with instructions to bind Elliott over for trial on each count.[1]

## BACKGROUND[2]

### *The Alleged Sexual Assaults*

¶2    The State originally charged Elliott with one count of rape and one count of forcible sexual abuse allegedly committed against Mary. The State also charged him with one count of forcible sexual abuse—that it later amended to attempted forcible sexual abuse—allegedly committed against Diane.[3] At the preliminary hearing, Mary and Diane testified as to the underlying events for each charge. Their testimony is summarized below.

¶3    One night in August 2023, Mary and Diane—both college freshmen—encountered Elliott in the parking lot of Mary's student housing complex. Elliott, who introduced himself as "Chris,"[4] told them about an off-campus party they could all

---

1. "Given the lack of adversarial briefing on the matter at hand, . . . our reversal is a non-merits decision that is not intended to have precedential value." *Zions Bancorporation, NA v. Schwab*, 2023 UT App 105, ¶ 15, 537 P.3d 273 (quotation simplified).

2. "In reviewing a magistrate's bindover decision, we view all evidence in the light most favorable to the prosecution, draw all reasonable inferences in favor of the prosecution, and recite the facts with that standard in mind." *State v. Nihells*, 2019 UT App 210, n.1, 457 P.3d 1121 (quotation simplified).

3. Mary and Diane are pseudonyms.

4. Elliott later disclosed his actual first name—David—to Diane, but he asked her not to tell Mary.

attend. The three then drove to the party together but did not remain there long before returning to Mary's apartment with a bottle of vodka.

¶4      At the party and later at the apartment, Mary and Diane consumed large amounts of alcohol. Elliott did not drink any alcohol. At one point, Diane began feeling ill, and the last thing she remembered from that night was vomiting in the bathroom while Elliott rubbed her back. The last thing Mary remembered from that night was lying down and falling asleep in her full-sized bed while Diane and Elliott were still in the bathroom.

¶5      The following morning, Diane awoke in Mary's bed with Elliott's arm on the waistband of her pants. Diane was unsure how she came to be in bed and felt "uncomfortable" and "upset." The zipper on her pants was pulled down. Mary was still asleep on the other side of Elliott in the bed. When Diane removed the blanket covering them, she discovered that Mary and Elliott were both naked from the waist down. Diane started yelling at Elliott to leave and threw his pants, which were located on the other side of the room, at him. Elliott responded, "[Y]our friend wants me to stay."

¶6      The yelling woke Mary. She soon realized that she was not wearing her pants or underwear, and she had no memory of removing them. Mary also observed blood coming from her vagina. Mary joined Diane in telling Elliott to leave, and he then complied. Mary testified that she never consented to Elliott touching her "in any way."

¶7      At the behest of Diane's mother, Mary and Diane went to a hospital to undergo sexual assault exams. Mary continued to bleed from her vagina for the next "two or three weeks."

*The Denial of Bindover*

¶8 At the beginning of the preliminary hearing, prior to any witness testimony, the magistrate called a sidebar conference. The magistrate first asked whether there was "any movement" in plea negotiations. After the State answered that they were "not even close at this point," the magistrate replied that they "should be closer." The magistrate then indicated that he had "read the case" and stated, "I could be totally wrong. But it sounds like buyer's remorse with these two girls that invited him to hang out with them. It's a tough case." The State answered that although it was "a tough case," it would "rather go to trial than take misdemeanors." The magistrate then suggested something along the lines of "a 402 reduction."[5]

¶9 After the sidebar ended, the magistrate addressed Elliott, stating that "there may be some middle ground here" that was "worth, at least, exploring." To that end, the magistrate gave the parties "ten minutes to talk." But the parties did not reach a plea agreement during that time and informed the magistrate that they were ready to proceed with the preliminary hearing. The State then called its witnesses. In addition to Mary and Diane, the State called a detective to testify regarding the results of Mary's sexual assault exam. The detective testified that Elliott's DNA was found around Mary's mouth and on her breast.

¶10 At the end of its presentation of evidence, the State moved to amend the forcible sexual abuse count relating to Diane to attempted forcible sexual abuse. The magistrate stated that he wanted to hear the State's argument on the rape charge relating to Mary before ruling on the motion to amend.

---

5. A "402 reduction" refers to a motion filed pursuant to Utah Code section 76-3-402, which authorizes a trial court to reduce the degree of a criminal conviction under certain circumstances.

¶11 Following argument, the magistrate declined to bind Elliott over for trial on any of the three counts. Apparently having granted the State's motion to amend, the magistrate first addressed the attempted forcible sexual abuse count, stating that although "Elliott may have wanted something to happen" with Diane, "he wasn't trying to force it to happen." Rather, according to the magistrate, Elliott left after Diane told him, "I don't want this."

¶12 As for the rape count relating to Mary, the magistrate indicated that "[t]here is not evidence of intercourse." The magistrate added that there was "no evidence that [Mary] was drugged in any way," although he conceded that she had consumed "some alcohol." Addressing Mary directly, the magistrate further stated, "I cannot find a reasonable inference, in part, because it's not reasonable that you fell asleep and don't know what happened without an explanation."

¶13 Similarly, the magistrate declined to bind Elliott over on the forcible sexual abuse charge relating to Mary for "lack of evidence." The magistrate stated that although the State presented direct evidence of Elliott's DNA on Mary's breast, the magistrate had "no idea where that came from or how it got there," adding, "It could have come from anywhere," including Mary "rolling over on" Elliott while in bed.

¶14 Accordingly, the magistrate dismissed all three charges. The State appeals.

ISSUE AND STANDARD OF REVIEW

¶15 The State challenges the magistrate's decision not to bind Elliott over for trial. Ordinarily, a bindover determination "presents a mixed question of law and fact and requires the application of the appropriate bindover standard to the

underlying factual findings." *State v. Prisbrey*, 2020 UT App 172, ¶ 18, 479 P.3d 1126 (quotation simplified), *cert. denied*, 485 P.3d 946 (Utah 2021). We also ordinarily "give limited deference to a magistrate's application of the bindover standard to the facts of each case." *Id.* (quotation simplified). But here, because Elliott did not file a brief or otherwise appear in this appeal, that is not the governing standard.

¶16 An appellee's "failure to file a brief" is not "a confession of error on the part of the appellee," nor does it "amount to an automatic default and consequent reversal of the lower court." *AL-IN Partners, LLC v. LifeVantage Corp.*, 2021 UT 42, ¶ 19, 496 P.3d 76 (quotation simplified). Nevertheless, the failure deprives appellate courts "of adversarial briefing on the matter at hand." *Zions Bancorporation, NA v. Schwab*, 2023 UT App 105, ¶ 15, 537 P.3d 273. Accordingly, although in such situations "we still must consider whether the appellant has carried its burden of persuasion on appeal," that burden "is significantly lower." *Id.* ¶¶ 14–15 (quotation simplified). That is, the appellant "need only establish a prima facie showing of a plausible basis for reversal." *AL-IN Partners*, 2021 UT 42, ¶ 19 (quotation simplified). *See Prima Facie*, Black's Law Dictionary (12th ed. 2024) (defining "prima facie" as "[a]t first sight; on first appearance but subject to further evidence or information").

ANALYSIS

¶17 "The primary purpose of preliminary hearings is to allow magistrates to ferret out groundless and improvident prosecutions without usurping the jury's role as the principal fact-finder." *State v. Schmidt*, 2015 UT 65, ¶ 19, 356 P.3d 1204 (quotation simplified). The State's evidentiary burden at this stage of a criminal proceeding is the "relatively low" probable cause standard. *Id.* ¶ 17 (quotation simplified). *See* Utah R. Crim. P. 7B(b). This standard requires "only the presentation of evidence

sufficient to support a reasonable belief that the defendant committed the charged crime." *State v. Ramirez*, 2012 UT 59, ¶ 9, 289 P.3d 444 (quotation simplified). *See State v. Clark*, 2001 UT 9, ¶ 15, 20 P.3d 300 (stating that the evidence presented at a preliminary hearing "need not be capable of supporting a finding of guilt beyond a reasonable doubt"). Moreover, circumstantial evidence alone is sufficient to establish probable cause. *Cf. Salt Lake City v. Carrera*, 2015 UT 73, ¶ 11, 358 P.3d 1067 ("It is a well-settled rule that circumstantial evidence alone may be sufficient to establish the guilt of the accused.") (quotation simplified).

¶18 At the preliminary hearing stage, the State need not "eliminate alternative inferences that could be drawn from the evidence in favor of the defense," *Ramirez*, 2012 UT 59, ¶ 9, because doing so would encroach upon the jury's role of fact-finder, *id.* ¶ 10. *See Schmidt*, 2015 UT 65, ¶ 18 (stating that at the preliminary hearing stage, it is "not appropriate for a magistrate to evaluate the totality of the evidence in search of the most reasonable inference") (quotation simplified). Accordingly, in making a bindover decision, a magistrate "must view all evidence in the light most favorable to the prosecution and must draw all reasonable inferences in favor of the prosecution." *State v. Maughan*, 2013 UT 37, ¶ 14, 305 P.3d 1058 (quotation simplified). A magistrate "may disregard evidence as incredible only where it is so contradictory, inconsistent, or unbelievable that it is unreasonable to base belief of an element of the prosecutor's claim on that evidence." *Schmidt*, 2015 UT 65, ¶ 31 (quotation simplified).

¶19 Thus, in applying the probable cause standard, a magistrate may decline to bind a defendant over for trial "only where the facts presented by the prosecution provide no more than a basis for speculation—as opposed to providing a basis for a reasonable belief." *Id.* ¶ 18 (quotation simplified). Speculation,

as opposed to a reasonable belief, occurs when "there is no underlying evidence to support the conclusion." *Carrera*, 2015 UT 73, ¶ 12.

¶20 Here, the State's burden on appeal is even lower than the already "lenient" probable cause standard. *Maughan*, 2013 UT 37, ¶ 14. As discussed above, because Elliott did not file a brief in this appeal, the State must make only a prima facie showing that the evidence plausibly supports a finding of probable cause to secure a reversal. *See AL-IN Partners, LLC v. LifeVantage Corp.*, 2021 UT 42, ¶ 19, 496 P.3d 76. And the State has carried that burden in this case.

¶21 Relating to Mary, the State charged Elliott with rape and forcible sexual abuse. As for Diane, at the preliminary hearing, the State moved to amend the third charge to attempted forcible sexual abuse. And while the magistrate did not expressly grant the motion, the magistrate did address attempted sexual abuse when denying bindover. We address each count in turn.

## I. Rape Charge: Mary

¶22 A person commits rape when, with "intent, knowledge, or recklessness," the person "has sexual intercourse with another person without the victim's consent." *State v. Newton*, 2018 UT App 194, ¶ 26, 437 P.3d 429 (quotation simplified), *aff'd*, 2020 UT 24, 466 P.3d 135. *See id.* ¶ 27; Utah Code Ann. § 76-5-402(2)(a) (LexisNexis Supp. 2025); *id.* § 76-2-102 (2017).[6] Sexual intercourse is without consent when, among other possibilities, the person "knows the victim is unconscious, unaware that the act is

---

6. Because the applicable provisions of the Utah Code in effect at the relevant time do not differ from those in the current version of the Utah Code in any way material to this appeal, we cite the current version of the printed code for convenience.

occurring, or is physically unable to resist." Utah Code Ann. § 76-5-406(2)(e) (LexisNexis Supp. 2025).

¶23   In denying bindover on this count, the magistrate determined that the State failed to establish that Elliott had sexual intercourse with Mary, stating, "There is not evidence of intercourse." The magistrate also pointed to the lack of evidence that Mary had been drugged and stated that it could not find a reasonable inference because it was "not reasonable" for Mary to fall asleep and not "know what happened without an explanation."

¶24   The State points to the following evidence as satisfying the probable cause standard for this count:

- Mary consumed large amounts of alcohol that night.

- Elliott did not drink any alcohol that night.

- Mary was fully clothed when she passed out on her bed.

- The next morning, Elliott and Mary were found in bed together, both completely naked from the waist down.

- Elliott's DNA was found on Mary's breast and around her mouth.

- Mary was bleeding from her vagina when she awoke, and the bleeding continued for the next couple of weeks.

¶25   The State argues that this evidence, largely provided through Mary's and Diane's testimony, supports the reasonable inferences that "Elliott felt sexual attraction towards Mary and acted on his attraction"; that "Elliott knowingly, intentionally, or recklessly removed his clothing, removed Mary's clothing, and penetrated Mary's vagina with his penis, causing Mary's injury"; and that Mary did not consent to the sexual intercourse because

she was passed out from overconsumption of alcohol. The State further takes issue with the magistrate's statement that it was "not reasonable" for Mary not to "know what happened." The State asserts that Mary not waking up during the alleged rape is readily explained by her having passed out due to excessive alcohol consumption.

¶26    This evidence and the reasonable inferences derived therefrom are sufficient to make a prima facie showing of a plausible basis for probable cause to bind Elliott over on the rape charge. That is, because there appears to be a sufficient "evidentiary foundation" supporting the State's theory of the charge, it does not amount to mere speculation. *Salt Lake City v. Carrera*, 2015 UT 73, ¶ 12, 358 P.3d 1067. *See State v. Schmidt*, 2015 UT 65, ¶ 18, 356 P.3d 1204. And without adversarial briefing on the matter, we have no occasion to delve further into the magistrate's ruling.

¶27    Accordingly, we reverse the magistrate's denial of bindover on the rape charge.

## II. Forcible Sexual Abuse Charge: Mary

¶28    As relevant here, a person "commits forcible sexual abuse if" the person, "without the consent of the individual," "touches the female breast of another individual" who is over 14 years of age with the intent to "arouse or gratify the sexual desire of any individual." Utah Code Ann. § 76-5-404(2)(a) (LexisNexis Supp. 2025). The magistrate denied bindover on this charge, citing "lack of evidence." The magistrate was unpersuaded by the evidence of Elliott's DNA on Mary's breast, stating he had "no idea where that came from or how it got there," and he suggested that "[i]t could have come from anywhere," including Mary "rolling over on" Elliott while they slept.

¶29    The State argues that the following evidence and the reasonable inferences derived therefrom supported a showing of probable cause that Elliott committed forcible sexual abuse of Mary:

- Elliott's DNA was found on Mary's breast.

- Elliott and Mary were found in bed together, both naked from the waist down.

- Mary was passed out and remained asleep when Elliott touched her breast.

The State argues that the fact that Elliott and Mary were both naked from the waist down supports the reasonable inference that Elliott's DNA was transferred onto Mary's breast "as part of his overall assault against Mary" and not from, as the magistrate suggested, Mary rolling over on Elliott as they slept.

¶30    Again, we are persuaded that the State has made a prima facie showing of a plausible basis for probable cause for this charge. All the circumstances identified by the State and cited above support a reasonable inference that Elliott's DNA was transferred onto Mary's breast during the course of sexual activity while Mary was passed out on the bed. And absent a response from Elliott, we have no occasion to address this argument further.

¶31    Accordingly, we also reverse the magistrate's bindover decision on the forcible sexual abuse charge.

III. Attempted Forcible Sexual Abuse Charge: Diane

¶32    A person attempts to commit an offense if the person "engages in conduct constituting a substantial step toward commission of the crime" and "intends to commit the crime." Utah Code Ann. § 76-4-101(1)(a), (b)(i) (LexisNexis 2017).

"[C]onduct constitutes a substantial step if it strongly corroborates the actor's [intent]." *Id.* § 76-4-101(2). The magistrate declined to bind Elliott over for trial on attempted forcible sexual abuse, stating that although "Elliott may have wanted something to happen" with Diane, "he wasn't trying to force it to happen," as evidenced by him leaving after Diane told him to.

¶33 In support of probable cause on this charge, the State points to the above-detailed evidence and reasonable inferences relating to the rape and forcible sexual abuse of Mary, *see supra* Parts I & II, as well as to Diane's testimony that she awoke the next morning to find the zipper of her pants down and Elliott's arm on the waistband of her pants. The State argues that this evidence supports the reasonable inference that "in addition to assaulting Mary, Elliott turned his attention to [Diane] and unzipped her pants as a substantial step towards also committing forcible sexual abuse against [Diane] while she slept" and that "Elliott intended to also sexually abuse [Diane] when he unzipped her pants." The State further argues that in concluding that Elliott "wasn't trying to force [anything] to happen," the magistrate failed to address the reasonable inference that Elliott unzipped Diane's pants while she lay asleep on the bed.

¶34 Once more, the State has made a prima facie showing that evidence existed supporting a plausible basis for a finding of probable cause that Elliott attempted to commit forcible sexual abuse of Diane. Diane's testimony of Elliott's hand on her waistband and of her open zipper supports a reasonable inference that Elliott had been the one to unzip her pants. This, combined with the above-discussed reasonable inference that, while Mary was unconscious, Elliott removed her pants and underwear and engaged in sexual activity with her, also supports a reasonable inference that Elliott may have had similar intentions with Diane when he unzipped her pants. Further, the act of unzipping her pants constitutes a "substantial step" toward committing forcible sexual abuse of Diane. And absent argument to the contrary, we

end our analysis at this prima facie showing of a plausible basis for probable cause.

¶35 We therefore also reverse the magistrate's denial of bindover on the attempted forcible sexual abuse charge.

CONCLUSION

¶36 In light of the State's prima facie showing of a plausible basis for finding probable cause on all three counts, we reverse the magistrate's bindover decision and remand the case with instructions to bind Elliott over for trial on each charge.

_____